JAMES C. EVANS and EDWIN T. EVANS, Appellants, *v.* THE COLUMBIAN INSURANCE COMPANY, Respondents.

A policy of insurance (marine) which excepts loss by the bursting of boilers, but covers that " occurring subsequent to and in consequence of such bursting," does not cover a total loss occasioned by an explosion so violent as to tear open the sides of the vessel to such an extent that the water admitted sinks her in five or ten minutes. As the vessel was manifestly worthless the moment the explosion had occurred, the loss was immediate upon, not subsequent to, the explosion, within the meaning of the policy.

(Argued September 26, 1870; decided December 28, 1870.)

APPEAL from a judgment in favor of the defendant, rendered at a General Term of the Supreme Court, in the eighth district, upon submission of a case under section 372 of the Code of Procedure.

On the 17th of March, 1864, the defendant issued to the plaintiff a policy of insurance, insuring $25,000 upon the body, tackle and apparatus, and other furniture of the steamship (propeller) called the Nile, from 16th April, 1864, to the 16th of December in the same year, the defendant taking upon itself the perils of the lakes, rivers, canals, fires and seasons that should come to the vessel and property insured, or any part thereof, excepting misfortunes arising from divers causes, and among them misfortunes arising " from the bursting or explosion of the boilers, collapsing of the flues, or

breakage of the machinery, unless by unavoidable external causes or fire ensues therefrom, services rendered in recovering or securing the vessel or property covered by the policy." It was also provided by a manuscript or written and controlling part of the policy that the clause referring to the bursting of the boilers and breakage of the machinery should be interpreted as follows : " This policy does not cover any loss or damage done by the bursting of boilers, collapsing of flues, or breakage of machinery, unless occasioned by some unavoidable external cause, or fire ensues; but any loss or damage occurring to the vessel subsequent to and in consequence of the bursting of the boilers," collapsing of flues, or breakage of machinery, is covered by this policy. In May, following the issuing of the policy, the boiler of the vessel, while navigating the Detroit river, "exploded and thereby became burst, the immediate effect of which was to cause large quantities of steam to escape therefrom through the rents and apertures caused by the bursting ; which steam, thus escaping, passed into the hull and body of the vessel, making large rents and apertures therein, through which large quantities of water then commenced to enter within said vessel, insomuch that from five to ten minutes after the explosion the vessel, by the weight of the water, sank, and became and was a total loss." From a photograph of the vessel, exhibiting what the parties agreed was a truthful representation of her appearance after she was submerged, it appeared that what is described as rents and apertures was a complete uncovering of the ribs of the fore-quarter of her bow, leaving nothing to obstruct the flow of the water of the river into her, and causing her to sink. Upon this agreed case, submitted under section 372 of the Code, judgment was rendered in favor of the defendant.

*George B. Hibbard*, for the appellant.

*Dudley Field*, for the respondent, cited 2 Pars. Ins. L., 55; *Strong* v. *Sun Mutual Ins. Co.* (31 N. Y., 103); *St. John* v.

*Amer. Ins. Co.* (11 N. Y., 516); *Barlow* v. *Scott* (24 N. Y., 40); *Paterson* v. *Harris* (1 Best & Smith, 336, 353); 1 Phill. Ins., §§ 1086-7; *Barnewall* v. *Church* (1 Caines, 217, 234); *Magnus* v. *Buttemer* (11 C. B., 876); *Hearne* v. *Edmunds* (1 Brod. & B., 388); *Wells* v. *Hopwood* (3 B. & Ad., 20); *Corcoran* v. *Gurney* (1 Ellis & B., 456, 463); *Blays* v. *Chesapeake Ins. Co.* (7 Cranch, 415); *McCargo* v. *New Orleans Ins. Co.* (10 Rob. La., 202); *Dalrymple* v. *Dalrymple* (2 Hagg. Conn., 93.)

GRAY, C. If the loss of this vessel was immediate upon, and not subsequent to the bursting of the boiler, the defendant is entitled to judgment. In order to a recovery by the plaintiffs, the onus is upon them to show by the facts agreed upon that it was subsequent to that event. The conceded facts do not, as a whole, in any aspect in which they can be presented, contain an admission or justify an inference that there was, between the bursting of the boiler and the time when the vessel became submerged, a moment, when for any premium however great she could have been insured against sinking, or that she was of any value whatever. The facts agreed upon are not represented by words alone. It is by words agreed, in substance, that an explosion occurred; that it caused the boiler to burst, and thereby rents and apertures to be made in her hull and body, through which large bodies of water *then* commenced to enter within the vessel. A photograph of agreed truthfulness representing the appearance of the vessel after she became submerged, exhibits the whereabouts of the rents and apertures in her hull and body, and their extent, through which it is agreed the water immediately commenced to enter, communicate to the mind as clearly as words can (the bursting of the boiler and the commencement of the water's entering being simultaneous), that, from the extent of the apertures and the large quantities of water entering through them, that no interposition could have rescued her from sinking. It is true that this fact is not stated in so many words; but the facts stated in words,

and those represented by the photograph, render the proposition here stated self-evident; if anything is lacking, there is the conceded fact that the inflowing of the water was so rapid that she became submerged in from five to ten minutes. When, therefore, the moment the boiler burst, the vessel necessarily became valueless, the loss became at once total, immediate, and not subsequent to the cause that occasioned it. When the injury is such that the consummation of the loss insured against commences, as in this case, the moment the injury is inflicted and is certain to be speedily effected, it is not divisible, part immediate, part subsequent, but immediate and total, whenever the thing insured is rendered, the moment of the injury that caused it, of no value. This vessel was manifestly worthless the moment the rents and apertures were made. The judgment should be affirmed.

HUNT, C. (dissenting.) This is a submission under section 372 of the Code. The defendants insured the vessel of the plaintiff against the perils of the seas while navigating our inland lakes and rivers. The policy was in the ordinary printed form, and contained the following printed statement, viz.: That there should be excepted from the perils insured against "for damage that might be done from the bursting or explosion of boilers, collapsing of flues or breakage of machinery." There was added in and by a written and controlling part of the policy, the following words: "It is hereby agreed that the clause in this policy referring to the bursting of boilers and breakage of machinery, is to be interpreted as follows: This policy does not cover any loss or damage done by the bursting of boilers, collapsing of flues or breakage of machinery, unless occasioned by some unavoidable external cause or fire ensues. But any loss or damage occurring to the vessel subsequent to and in consequence of the bursting of boilers, collapsing of flues, or breakage of machinery, is covered by this policy.

The case submitted then further states that while the policy was in force "the boiler of the vessel, by the force of the

steam within the same, exploded and the said boiler thereby became burst." "That an immediate effect of the said explosion was to cause large quantities of the steam, generated within the said boiler, to escape therefrom through the rents and apertures made therein by the said bursting; which steam, thus forced through said apertures into the hull and body of the vessel, by its force damaged the hull and body of said vessel to such an extent as to make large rents and apertures therein, and through said rents and apertures large quantities of water entered said vessel," and in a space of five to ten minutes, the said vessel "by the weight of the water settled down, sunk and became submerged in the said river, and became and was an actual and total loss."

Upon this state of facts, the insured claims that the underwriter is liable for the loss. The underwriter insists that the loss arises from a peril excepted from the risk, to-wit: the bursting or explosion of a boiler.

It is expressly admitted in the case submitted, that the written or manuscript provisions of the policy control the printed portion. The law also adjudges this to be the case. If they are harmonious both will stand. If they are discordant the writing prevails over the printed statement. The writing was inserted at the request of the agent of the insured. He supposed that he had obtained a more favorable policy than if no special provision had been inserted. Still he takes no benefit, unless he has actually secured a benefit. Unless he has inserted words apt to define such advantage, his intention goes for naught.

It will be observed in the first place, that the printed provision, excepts from liability for loss arising "from the bursting or explosion of boilers," using both the words bursting and explosion. The written clause provides for an interpretation of the words "bursting of boilers," omitting the word explosion. The loss is stated in the case to have arisen from an "explosion." The appellant argues that the interpreting clause, qualifies the printed clause to the extent of limiting the exception to a bursting only, leaving the underwriter

liable for a loss by explosion. Were these two words used in the first clause as synonymous, or were they intended to express different classes of perils? The case states "that the boiler exploded, and thereby it become burst." The appellant insists that an explosion includes not only a rupture of the body, but the violent escape of the expanding force, while a rupture is simply the rending asunder of the body itself. "In explosions proper, the boiler is not only ruptured, and often thrown from its place, but fragments of it are usually hurled with terrible force, accompanied by the escape of steam." (15 New Am. Ency., 60.) "A steam boiler is said to rupture when the failure is not accompanied by the sudden or extraordinary development of elastic force, the material giving way by cracking or splitting open, and affording an outlet for the water and steam. The boiler is said to explode when the failure is accompanied by an extraordinary development of elastic force, the boiler being rent and torn asunder at strong places and weak places frequently without distinction." (20 En. Br., 634.) Notwithstanding learned authors and scientific men, may make this distinction, there is no difference in the ordinary understanding of the meaning of these words. When it is stated that there has been an explosion of the boiler of a steamboat, or a locomotive, the fact is stated in either or both forms. It is a common, perhaps not a refined expression, that the boiler has burst. Others would say, there has been an explosion. The ordinary idea I take to be, that the explosion is the cause, while the rupture is the effect. It would be quite unsafe in construing a commercial instrument, where strict technical terms are not looked for, to hold these two words as having different meanings. I think the parties understood them as synonymous, and supposed, when they interpreted the peril from the bursting of a boiler, that they thereby included that of an explosion of a boiler. Webster gives the definition thus: "To explode, to burst forth, as sound; to burst and expand with force and a violent report, as an elastic fluid." He defines "burst, to break or rend by force or violence."

There is no difference in these definitions. Explosion again is defined " a sudden and violent expansion of the parts of a body." (Brande Dic. Science and Art.) In the new American Encyclopedia, the same definition in given with the addition, " by its component parts acquiring a great increase of bulk." Although ingenious and plausible, this argument of the appellant is not sound.

I am in favor of the right to recover upon the ground, that the loss of the vessel, was subsequent to, and in consequence of the bursting of the boiler. The statement uses the word " or," and not " and." In my view, both the facts concurred, the loss was subsequent to, and it resulted from the bursting of the boiler. It resulted from it remotely, consequentially. It is in this sense, and not as the direct and immediate cause, that the language is used. This direct and immediate cause is expressly excluded. The fact is thus stated in the case : " The explosion occurred while the vessel was lying along side of Buckly's dock at Detroit. An immediate effect of the·explosion, was to cause large quantities of steam within the boiler, to escape therefrom through the rents and apertures made therein by the said bursting, which steam thus forced through the said rents and apertures, into the hull and body of the vessel, by its force damaged the hull and body of the vessel, to such an extent as to make large rents and apertures therein, and through such rents and apertures in the body of the vessel, large quantities of water entered into the vessel, and in a few minutes, by the weight of the water thus entering, the vessel sunk, was submerged, and became an actual and total loss." Let us consider these statements separately :

1st. The vessel sunk to the bottom and became an actual total loss.

2d. She so sunk by reason of the weight of the water which had entered into her.

3d. The water entered into her by reason of the rents and apertures in her hull and body.

4th. Such rents and apertures in her hull and body were made by steam which escaped from the boiler.

5th. Such steam escaped from the boiler in consequence of a rupture or bursting thereof. If the bursting and explosion are to be deemed different things, which I think they are not, then,

6th. Such bursting or rupture of the boiler was caused by an explosion of the expansive force therein contained. Omitting the last, which I deem an unsound distinction, and omitting the first, which is a result simply, we have four separate causes for the loss of the vessel, each following the other. Thus, the vessel sunk from the weight of the water within her. What caused this weight of water to be in the vessel? Answer. The rents and apertures in her hull and body. What caused the rents and apertures to be in her hull and body? Answer. The steam which escaped from her boiler. What caused the steam to escape from her boiler? Answer. The rupture or bursting of the boiler. The final and proximate cause of the loss, was that the vessel was filled with water. This sunk her and submerged her. Each of the others was a *causa causans* simply, a cause of a cause, remote, not immediate. The original and most remote, being the bursting of the boiler.

A vessel sets sail on Sunday, a tempestuous day. The next day proves to be calm and pleasant. The storm carries away one of her sails. In endeavoring to repair the damage, the captain is lost overboard. In consequence of his loss the ship is badly managed, goes ashore, and becomes a total loss. Here, again, are four separate and consecutive causes for the loss: 1. The stranding of the vessel; 2. The stranding was caused by the loss of the captain; 3. The loss of the captain was caused by the presence of the storm injuring the sails; 4. The presence of the storm was caused by the sailing into it on Sunday, instead of delaying until Monday, when no storm existed. It would be admitted by every lawyer, in such a case, that the loss arose from the stranding of the vessel; that this was the immediate cause, and the others were too remote to be taken into account. Suppose, in this case, the

policy had omitted the words, "unless fire ensue," and there had appeared this state of facts: The boiler had exploded; the force of the steam therein had driven the flames from the furnace into the different parts of the vessel; the flames had seized upon the inflammable portions, and the vessel had been burnt to the water's edge. The immediate cause of the loss would have been the destruction by fire; and how the fire originated would be unimportant, unless from some prohibited cause. The law looks to the immediate cause of the loss, and adjudges it to be by fire in the latter case, by stranding in the first, disregarding the intermediate or remote causes. So, in the case before us, the sinking of the vessel is to be regarded as the immediate cause of its destruction. The loss is remotely and consequentially from the bursting of the boiler, as contemplated in the language before quoted.

It is insisted by the respondent, that the admission of a liability if "fire ensues," is an exclusion of liability from any other cause. If the stipulation had ended with those words, there would have been plausibility in the argument. It however immediately adds the words on which the appellants rely, that, if a loss subsequent to the bursting shall occur, or in consequence thereof, the underwriter will be responsible. Taken together, it amounts to an exclusion of liability for damage done by the explosion itself, but assumes the liability which is subsequent thereto, although it may be caused thereby, whether such damage arise from fire or other cause. An explosion might do great injury, or it might do little. The subsequent damage might be great or small. For the former, the insurer declared that it would not be liable; for the latter, that it would be. It made its own calculation of chances of injury from the different sources, fixed its rates of compensation accordingly and embodied the result in its policy.

The respondent insists, also, that the present was not a loss occurring subsequent to the bursting of the boiler, within the meaning of the policy. The case states that the vessel sunk within five to ten minutes after the explosion. That event is subsequent to another, which is later in the time of its occur-

rence.   An event, occurring five minutes after another, is as certainly subsequent to it as if five centuries had intervened. A thousand years are but as yesterday, in His sight whose existence had no beginning and will have no end.   To us, time is a certain material fact, indicated by the passage of days, hours and minutes.   When it is admitted that the sinking did not occur until five to ten minutes after the explosion, there is no room for the assertion that the one event was not subsequent to the other.

The respondents refer to the photographic picture of the sunken vessel, as it is given in the case, and argue from its appearance that the vessel was destroyed by the explosion, and hence that the plaintiff cannot recover.   Before a jury, the argument would be well.   Before this court, all the facts must be agreed upon.   It is here agreed that the vessel became and was an actual total loss.   The precise cause of the loss is also stated.   This I have already discussed, and have endeavored to show that it fell within the perils insured against.

None of the authorities cited by the respective counsel bear directly upon the case.   It must be decided upon a construction of its own provisions; and, in considering them, I am able to reach no other conclusion than that I have already stated.   (See the cases cited, of *St. John* v. *A. F. & M. Ins. Co.*, 1 Kern., 516; 1 Duer, 371.)

If these views are correct, the plaintiffs are entitled to judgment for $25,000, the amount of the policy, with interest from September 5, 1864.   There was expended, in endeavor to save the property, the sum of $7,114.67.   The policy being for $25,000, and the value of the vessel and furniture being fixed at $30,000, and this expenditure having been agreed to be borne in the proportion of five-sixths by the underwriter and one-sixth by the insured, the plaintiffs are entitled to recover on this account the further sum of $5,928.90, with interest from the same date, September 5, 1864.

For affirmance, Lott, Ch. C., Gray, Earl, and Leonard, CC.

For reversal, Hunt, C.

Judgment affirmed, with costs.