**ROYAL SAUSAGE & MEAT CO., Plaintiff-Appellant, v.
AETNA CASUALTY & SURETY CO., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22788.   Decided February 3, 1954.

O. J. Green, S. N. Hosenball, Cleveland, for plaintiff-appellant.

Arter, Hadden, Wykoff & Van Duzer (J. H. Wilkinson, of Counsel), Cleveland, for defendant-appellee.

## OPINION

Per CURIAM:

In this appeal on questions of law from the Municipal Court of Cleveland error is predicated upon the action of the trial court in granting defendant's motion made at the close of plaintiff's case for a directed verdict and entering judgment for the defendant.

Plaintiff filed his petition praying for judgment against defendant upon an insurance policy issued by defendant for loss due to "water damage." The essential facts are not in dispute. The plaintiff had in his premises located at 5015 Fleet Ave., Cleveland, Ohio, an industrial appliance known as a sausage stuffer operated by air pressure. On August 20, 1950, plaintiff was using the sausage stuffing machine in the manufacture of wieners and bologna. In this operation the stuffer was filled with ground meat weighing around 290 to 300 pounds. The air pressure applied was from 60 to 80 pounds. By this process, the ground meat was forced into visking casings which formed the completed product of wieners and bologna. During the course of the operation two accidents occurred on that day due to the rupture of the top of the stuffing machine under air pressure. The first accident occurred early in the day and is not here involved because there was no water damage as result thereof. The second accident resulted in water damage by reason of a part of the ruptured top of the machine striking a water pipe with violence sufficient to cause a leak.

Plaintiff testified in substance in relation to the first accident, reference to which is necessary only to show the sequence of events, that the "top of the machine * * * blowed out." At this time the meat which was in the stuffer was spread all around the room by reason of the rupture of the metal top and the force of the sudden release of the air pressure.

After this accident the plaintiff called The Guarantee Welding Company which sent three men to his premises and who proceeded to weld the broken pieces of the top together and assured plaintiff that the welded pieces would hold up under "a thousand pound pressure." The welding was done by them on the premises, and the top was closed by the workmen and the machine again placed in operation. The air pressure was again applied and the top that had been welded cracked once again throwing one of the parts of the top into the air a distance of about four and one-half feet striking a one and one-half inch water pipe running down to the sausage stuffer with such force as to pierce the pipe

and to cause the water to flow from the pipe and flood the premises doing extensive damage to meat and visking casings on tables in the midst of preparation for further manufacture. A claim was made to the defendant insurance company under the provisions of the policy. The insurance company, after investigation, declined to allow the claim on the ground that the leak was caused by an "Explosion," a peril not included in the policy.

The trial court directed a verdict entering a 'judgment for defendant on the ground that the water damage was due to an explosion within the meaning of the policy. Plaintiff contends that the trial court erred in holding as a matter of law that the damage was caused by the excepted peril of "explosion" and asserts that the question should have been submitted to the jury as a matter of fact or that the court should have directed a verdict for plaintiff, leaving to the jury the sole question of determining the amount of damage to which plaintiff would be entitled.

So far as pertinent, the provisions of the policy are as follows:

"Water Damage": Wherever in this policy, the term "Water Damage" occurs, it shall be held to mean (a) the accidental discharge, leakage, or overflow of water or steam from within the following source or sources; plumbing systems (excluding sprinkler systems) plumbing tanks for the storage of water for the supply of a plumbing system  heating systems, elevator tanks and cylinders, standpipes for fire hose (except when supplied by a sprinkler system) industrial or domestic appliances and refrigerating or air conditioning systems: (b) the accidental admission of rain or snow directly to the interior of the building through defective roofs, leaders or spouting, or through open or defective doors, windows, skylights, transoms or ventilators."

"Perils not included: This company shall not be liable for loss by 'water damage' or collapse or fall of a tank caused directly or indirectly by * * * (k) explosion (including explosion of refrigerating and air conditioning systems): (1) explosion or rupture of steam boilers or fly wheels * * *."

At the outset it is well to note, for the purposes of the motion for judgment made at the close of plaintiff's case, that two principles of law operate favorably to the plaintiff: (1) upon such motion plaintiff was entitled to have the evidence construed most strongly in his favor and (2) the policy having been prepared by and presented by the insurance company, the plaintiff was entitled to have the terms thereof strictly construed against the defendant.

In consideration of these principles of law, the question arises whether reasonable minds could arrive at one conclusion which, if favorable to the defendant, would require the court to grant the motion. If, on the other hand, reasonable minds could arrive at different conclusions, the plaintiff was entitled to have the case submitted to the jury under proper instructions by the court.

In our analysis of the pertinent provisions of the policy we conclude that "water damage" due to the accidental discharge, leakage or overflow of water from within the plumbing system, if caused by an explosion, would require this court to affirm the judgment of the trial court.

The parties have favored this court with five separate briefs in which many cases are cited and quoted from this and other jurisdictions.

In its original brief the plaintiff contended for a submission of the case to the jury on the question of fact, but in its final brief argues that plaintiff is entitled to a directed verdict in its favor. Plaintiff has cited as a leading Ohio case, **United Life, Fire & Marine Ins. Co. v. Foote, 22 Oh St 340.** That case involved a policy of insurance against fire, but excepted from the risk, any loss by explosion. The court in paragraph 1 of the syllabus said:

"In an action upon the policy it appeared that an explosive mixture of whiskey vapor and atmosphere had come in contact with the flame of a gas jet from which it ignited and immediately exploded, whereby a fire was set in motion which destroyed the insured property.

"**Held,** that in such case it cannot be said that the destruction was caused by a fire within the meaning of the policy, but on the contrary the loss was by fire occasioned by the explosion."

Plaintiff quotes from the language of the court at page 348 to the effect that an explosion is an idea of degrees "and the true meaning of the word in each particular case must be settled not by any fixed standard or accurate measurements, but by the common experience and notions of men in matters of that sort."

It is significant to note, however, that the court in that case held as a matter of law that the fire loss was occasioned by the explosion.

Plaintiff cites and quotes from many other cases decided in other jurisdictions. We have examined these authorities and numerous other cases cited by defendant. We find no case directly in point due perhaps to the unusual facts and circumstances of this case.

The only witness for plaintiff was the President of the company. In his testimony concerning the first accident, he stated that the machine "blowed up," that it "blew up." After the top of the machine had been welded, he testified that when the air was applied, "the top blew up again, blew up this time on the ceiling and the water pipe was damaged. In his cross-examination, he testified as to the second accident: "I heard this **bang noise**, then the meat splash around the sausage machine and the bulbs breaking." Another example of plaintiff's testimony follows:

"Q. When this machine exploded the first time, did you use the stuff that was inside of it, the meat that was in it?

"A. This exploded the first time, that what was good I used, what was no good I cannot use * * *."

And again,

"Q. Was this a loud noise?

"A. When the meat splashed all around and the water pipe broke, you could hear it.

"Q. What was the first thing you heard?

"A. I heard this **bang noise** then the meat splash around the sausage machine and the bulbs breaking."

From this and other testimony, it is clear that the witness described what he considered to be an explosion.

In Commercial Union Fire Insurance Company of New York v. Bank of Georgia, 197 Fed. 2d, 455, the United States Circuit Court of Appeals for the 5th Circuit gave this following definition of the word "explosion" and in the course of the definition cited authorities and inter alia referred to the Ohio case of United Life, Fire and Marine Ins. Co. v. Foote, et al, supra, with approval:

"**An explosion is a rapid, sudden, and violent expansion of air or relinquishment of energy, causing a rupture and accompanied by a loud noise, not necessarily extremely loud.** Fire is perhaps the principal cause of explosions, but they may be produced without the aid of fire. A flywheel may explode from excessive speed if its governor breaks. Even severe frost often causes trees to explode. It has been said that there is no difference in ordinary usage between explode and burst; the ordinary idea is that the explosion is the cause while the rupture is the effect. 1 Bouvier's Law Dictionary, Rawle's Third Revision, page 1161 citing **United Life, Fire & Marine Ins. Co. v. Foote, 22 Oh St 340, 348;** Evans v. Columbian Ins. Co. 44 N. Y. 146, 150. The acts that constitute an explosion within the meaning of the extended coverage provision of this policy must be determined from the language of the policy, the ordinary uses of the word, the common experience

of men, and their general notions in matters of this sort. One of the definitions in Webster's dictionary for the verb **explode** is to 'burst noisily.' In Louisville Underwriters v. Durland, 123 Ind. 544, 24 N. E. 221, 223, 7 L. R. A. 399, the court said that the bursting of a boiler and the explosion of a boiler were one and the same thing. In 35 C. J. S., Explosion, page 215, note 3, it is said that an explosion may be produced **by the sudden liberation of air from an air gun.**" (Emphasis supplied.)

Applying this comprehensive and accurate definition to the facts of the instant case as developed through the testimony of plaintiff's only witness and to the entire record, we are constrained to hold that the efficient cause of the leak and resultant "water damage" was the explosion of the sausage stuffing machine.

It is our conclusion that the explosion was due to the application of compressed air to the filled stuffing machine in such a manner as to cause the metal top of the machine to burst into pieces, causing one of the exploding pieces of metal to pierce the water pipe, producing the leak and subsequent "water damage," within the meaning of the policy. On this question, we think that reasonable minds could come to only one conclusion and that adverse to the plaintiff.

For the reasons stated, the judgment of Municipal Court is affirmed. Exceptions noted. O. S. J.

HURD, PJ, KOVACHY, J, SKEEL, J, concur.