**PEOPLE OF THE VIRGIN ISLANDS, Appellant/Plaintiff**
**v.**
**ROLAND G. MURRELL, JR., Appellee/Defendant**

S. Ct. Criminal No. 2011-0074

Supreme Court of the Virgin Islands

June 18, 2012

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, St. Thomas, USVI,
*Attorney for Appellant.*

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI,
*Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN,
*Associate Justice.*

**OPINION OF THE COURT**

(June 18, 2012)

HODGE, C.J. The People of the Virgin Islands seek appellate review of
a July 28, 2011 Superior Court Order,[1] which granted a motion filed by
Roland G. Murrell, Jr., to suppress various items of physical evidence as
well as statements obtained during a "stop and frisk" that occurred on
December 18, 2010. For the reasons that follow, we affirm.

**I. STATEMENT OF FACTS AND PROCEDURAL POSTURE**

This interlocutory appeal stems from charges filed as the result of a
questioning and search of Murrell that occurred on December 18, 2010,
near a St. Thomas nightclub. Specifically, the People, in an information
filed on January 11, 2011, charged Murrell with unauthorized possession

---

[1] Although signed by the Superior Court judge on July 27, 2011, the Clerk of the Superior
Court did not enter the order until July 28, 2011. *See* V.I.S.CT.R. 5(b)(6) ("A judgment or
order is entered within the meaning of this subdivision when it is entered on the criminal
docket.").

of a firearm with altered serial numbers in violation of 23 V.I.C. § 481(b), unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a), and unauthorized possession of ammunition in violation of 14 V.I.C. § 2256(a). On April 20, 2011, Murrell filed a motion to suppress all evidence obtained through the December 18, 2010 "stop and frisk," including statements he made to the police as well as a firearm and ammunition found on his person, on the grounds that they were obtained as a result of a seizure and search that violated the Fourth Amendment of the United States Constitution.[2]

The Superior Court held a suppression hearing on July 19, 2011, in which it heard testimony only from a single witness, Officer Bernard Douglas, Jr. At the hearing, Douglas testified on direct examination that he and four other officers were patrolling the area around the nightclub, and that at approximately 1:50 a.m. on December 18, 2010, a citizen — who did not give his name, but who had provided the police with a reliable tip in the past — informed him that "he saw a young black male, purple shirt, white hat with a gun on his person." (J.A. 35.) Although Douglas testified that there were approximately 100 people at the nightclub, he stated that only Murrell fit that description, and that Murrell tried to walk around the officers after he saw them. (J.A. 36-39.) Douglas further stated that at this point the officers called Murrell over, told him to put his hands on the top of a hedge, with an officer on either side of him and one at his back, and "ask[ed] him if he had any weapons on him." (J.A. 40.) According to Douglas, when Murrell answered yes, he asked him where the firearm was, and after Murrell said it was in his back left pocket, Douglas retrieved it and identified it as a loaded semi-automatic handgun. (J.A. 40-41.) Douglas then testified that he asked Murrell if he had a license to carry a firearm in the Virgin Islands, and Murrell replied no, at which point Douglas handcuffed him and transported him to the police station. (J.A. 42-43.) During cross-examination, Douglas expressly stated that he did not know if Murrell had a license to possess a firearm prior to asking him that question, testified that he had told Murrell to put

---

[2] The Fourth Amendment of the United States Constitution applies to the Virgin Islands. See The Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 87-88 (1995) (preceding V.I. *Code Ann.* tit. 1) ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States . . . the first to ninth amendments inclusive. . . .").

his hands on the hedge as part of a safety check, and said that Murrell was not free to leave after he said he was carrying a firearm. (J.A. 53-54.)

Once Douglas concluded his testimony, the parties presented legal arguments to the Superior Court, with the People arguing that *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), authorized the initial "stop and frisk," while Murrell contended that *Terry* did not apply because Douglas lacked reasonable suspicion that criminal activity was afoot since, at the time the search occurred, there was absolutely no evidence that Murrell lacked authorization to possess a firearm. At the end of the hearing, the Superior Court orally announced its findings of fact and conclusions of law, ultimately holding that although Douglas possessed a reasonable belief that Murrell had a firearm, his own testimony indicated that he had no reason to believe that Murrell did not possess a license for the firearm or that the firearm had an altered serial number. (J.A. 88-90.) Moreover, the Superior Court found that Douglas's testimony indicated that Murrell complied with all of his requests and did not show that he was acting in a hostile manner or otherwise posed a danger to anyone at the time of the incident. Thus, relying on *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000), the Superior Court orally granted the motion to suppress, which it later memorialized in a July 28, 2011 written Order.

The People filed a notice of appeal on August 26, 2011, which sought immediate appellate review of the July 28, 2011 Order, and simultaneously certified that the appeal was not taken for purposes of delay and that the evidence suppressed represented substantial proof of facts material to the charges pending against Murrell. *See* V.I. CODE ANN. tit. 4 § 33(d)(2). However, although Lofton Holder, Esq., an Assistant Attorney General assigned to the Criminal Division of the Department of Justice, had represented the People at the July 19, 2011 suppression hearing, the notice of appeal was signed solely by Matthew Phelan, Esq., an Assistant Attorney General assigned by the Solicitor General's Division who had not entered an appearance on behalf of the People and up to that point had not participated in the Superior Court proceedings. But shortly thereafter, on August 30, 2011, Attorney Holder filed a motion to continue in the Superior Court, which solely requested the automatic continuance pending appeal authorized by section 33(d)(2). However, Attorney Holder attached Attorney Phelan's notice of appeal as an exhibit

to his motion, and stated that its contents were being "made apart [sic] hereof." (J.A. 24.)

Due to its interlocutory and emergency nature, this Court, in a September 12, 2011 Order, expedited this appeal and issued an abbreviated briefing schedule. However, when the People failed to timely file a brief, this Court, in an October 21, 2011 Order, *sua sponte* dismissed the appeal pursuant to Supreme Court Rule 25(c). After the People filed a motion to set aside the dismissal, Murrell, in his first responsive filing on appeal, argued that notwithstanding the People's failure to timely file a brief, the appeal should remain dismissed because the People also failed to fully comply with section 33(d)(2), which permits an immediate appeal of an order suppressing evidence only if "the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." According to Murrell, this language mandates that the Attorney General personally make such a certification to the Superior Court, and that therefore this Court lacks jurisdiction over the appeal because both the notice of appeal and the motion to continue had been signed solely by an Assistant Attorney General. This Court, in a March 2, 2012 Order, set aside the October 21, 2011 dismissal[3] and issued a new briefing schedule, but required the parties to brief, in addition to the merits, several issues relating to Murrell's challenge to the certification, including (1) whether the certification may be signed by an Assistant Attorney General in lieu of the Attorney General; (2) if the Attorney General's personal signature is not required, whether Attorney Phelan qualified as "the Attorney General conducting the prosecution," and (3) if Attorney Phelan was not "the Attorney General conducting the prosecution," whether the motion to continue filed by Attorney Holder — which included Attorney Phelan's

---

[3] In his appellate brief, Murrell contends that this appeal is moot because the March 2, 2012 Order had found that the People did not provide sufficient explanation for the failure to timely file a brief pursuant to the initial briefing schedule. However, notwithstanding this holding, the March 2, 2012 Order unambiguously set aside the October 21, 2011 dismissal and re-instated this appeal. Even if we were to very liberally construe this portion of Murrell's brief as an argument that this Court should not consider the People's appeal on the merits because the People have failed to "diligently prosecute[]" this appeal in violation of title 4, section 33(d)(5), we decline to do so because the People timely filed a motion to set aside the initial dismissal, and were precluded by Supreme Court Rule 35(e) from filing a brief unless this Court granted permission to cure the deficiency, which we did not do until March 2, 2012.

notice of appeal as an exhibit, but was filed after the thirty day period for taking an appeal had expired — was sufficient to cure any defect.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Although the People may not generally appeal an order or judgment in a criminal case, *People v. George*, 49 V.I. 504, 507 (V.I. 2008), statutory authority expressly permits the People to appeal an order suppressing evidence prior to trial. *See* 4 V.I.C. § 33(d)(2) ("An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence . . . ."). However, the same statute authorizes such an appeal only if only if "the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding."[4] In addition, the thirty day period to file a notice of appeal initiating an interlocutory appeal authorized by section 33(d)(2) is jurisdictional. *People v. Ward*, 55 V.I. 829, 838 (V.I. 2011) (citing 4 V.I.C. § 33(d)(5) ("The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.")).

Ordinarily, this Court reviews findings of fact for clear error, but exercises plenary review over legal conclusions. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Likewise, when a case involves the interpretation of the United States Constitution, our standard of review is plenary. *Latalladi v. People*, 51 V.I. 137, 141 (V.I. 2009). But,

---

[4] The parties disagree in their respective briefs as to whether any defect with the certification mandated by section 33(d)(2) represents a jurisdictional defect. Significantly, while Murrell frames his argument in jurisdictional terms, the People have noted that federal courts have held that the certification requirement codified in 18 U.S.C. § 3731 is not jurisdictional, and therefore the failure to timely file a certification — as opposed to a notice of appeal — does not mandate dismissal as a remedy. *See, e.g., United States v. W.R. Grace*, 526 F.3d 499, 506 n.4 (9th Cir. 2008) (collecting cases). Nevertheless, since the People have complied with the certification requirement, we decline, as part of this appeal, to determine whether the failure to timely file a section 33(d)(2) certification deprives this Court of appellate jurisdiction.

if a party has not raised an issue before the Superior Court or in its appellate brief, we reverse only if the appellant can satisfy the four-prong plain error test. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). *Accord Brown v. People*, S. Ct. Crim. No. 2011-0022, 2012 V.I. Supreme LEXIS 45 (V.I. May 24, 2012) ("The defendant bears the burden of establishing the existence of plain error.").

## B. Attorney General's Certification

Pursuant to statute, "[a]n appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence . . . if the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." 4 V.I.C. § 33(d)(2). In their appellate briefs, both the People and Murrell recognize that the phrase "the Attorney General conducting the prosecution" in section 33(d)(2) is unusual, in that the Virgin Islands Code recognizes only a single Attorney General, *see* 3 V.I.C. § 112(a), who has the duty "to prosecute in the inferior courts all offenses against the laws of the Virgin Islands." 3 V.I.C. § 114(a)(2). According to the People, it is well known that the Attorney General cannot personally prosecute every single criminal case in the Superior Court, and that therefore local law permits the appointment of Assistant Attorneys General, who "shall perform such duties as the Attorney General prescribes." 3 V.I.C. § 113(b). Essentially, the People contend that the Legislature deliberately intended for the phrase "the Attorney General conducting the prosecution" to encompass an Assistant Attorney General who has been assigned by the Attorney General to handle a particular matter. Moreover, the People argue, in any event, that section 33(d)(2) was modeled after 18 U.S.C. § 3731, and contend that appellate courts have construed the phrase "the United States attorney" in that statute to encompass Assistant United States Attorneys.

Murrell, however, sedulously contends for a much more restrictive interpretation of the statute. In his appellate brief, Murrell argues that the plain text of section 33(d)(2) contemplates that the Attorney General personally make the required certification to the Superior Court. Murrell correctly observes that the United States and the Government of the Virgin Islands constitute the same sovereign, *see In re Application of Alvis*, 54 V.I. 408, 413-14 (V.I. 2010), and recognizes that the Virgin

Islands Attorney General and the United States Attorney for the Virgin Islands possess concurrent authority to prosecute criminal offenses arising under local law. For instance, Murrell states that the Revised Organic Act of 1954 provides that a United States Attorney may prosecute criminal offenses arising under local law in the District Court if the District Court possesses jurisdiction and, upon the request of the Governor of the Virgin Islands or the Virgin Islands Attorney General, the United States Attorney may also "conduct any other legal proceedings to which the government of the Virgin Islands is a party in the district court or the courts established by local law." 48 U.S.C. § 1617. Murrell further notes that the former 4 V.I.C. § 39(b) — which, prior to the establishment of this Court, governed interlocutory appeals by the government of suppression orders in criminal cases and contains virtually identical language as section 33(d)(2) — imposed an identical certification requirement, but required certification by "the United States Attorney or the Attorney General conducting the prosecution." Although not directly stating so, Murrell appears to imply that the phrase "conducting the prosecution" was a necessary part of the former section 39(b) in light of the fact that a given criminal case arising under local law could be prosecuted by either the United States Attorney or the Attorney General, but which the Legislature inadvertently failed to remove when, in enacting section 33(d)(2), it eliminated the accompanying reference to the United States Attorney.

We agree with Murrell that the phrase "the Attorney General conducting the prosecution" is likely a holdover from the former section 39(b) and that the Legislature intended to simply refer to the Attorney General. But while the Legislature may have — given that an interlocutory appeal by the government in a criminal case is not an everyday occurrence — intended for the Attorney General to decide whether to take an appeal, this does not mean that the Attorney General must personally sign the section 33(d)(2) certification. The Legislature has expressly authorized the Attorney General to delegate duties to Assistant Attorneys General. *See* 3 V.I.C. § 113(b). While some courts have recognized that a public official may not delegate a duty to the extent the delegation constitutes divesting or transferring a fundamental responsibility of the office, *see, e.g., Schumer v. Holtzman*, 60 N.Y.2d 46, 454 N.E.2d 522, 525, 467 N.Y.S.2d 182 (N.Y. 1983), most appellate courts to consider the question have held that — even in the absence of explicit statutory authorization permitting delegation of a particular

function — an attorney general or similar official may delegate prosecutorial duties to assistants authorized to practice law, given the impossibility of personal performance of every statutory duty. *See United States v. Kleve*, 465 F.2d 187, 190 (8th Cir. 1972) ("Defendants' contention that the Assistant United States Attorney in charge of the prosecution cannot be delegated authority by the United States Attorney to file the certificate lacks merit.") (interpreting 18 U.S.C. § 3731); *see also United States v. Jackson*, 544 F.3d 1176, 1184 (11th Cir. 2008) (holding that Assistant United States Attorney may file information requesting sentence enhancement based on prior conviction even though statute says that information must be filed by "the United States attorney"); *United States v. Hawthorne*, 235 F.3d 400, 404 (8th Cir. 2000) (same); *Ryan v. Comm'r*, 568 F.2d 531, 540 (7th Cir. 1977) ("[T]he statute has no requirement that the United States Attorney, rather than one of his assistants, personally sign the petition, although the statute does require that the United States Attorney must make the request. Since the motion for a grant of immunity was brought in the name of the United States Attorney, and the motion was signed in his name, it was in substantial compliance with the statute."); *Scott v. Association for Childbirth at Home, Int'l*, 88 Ill. 2d 279, 430 N.E.2d 1012, 1022, 58 Ill. Dec. 761 (Ill. 1981) (permitting assistant attorney general to issue subpoena notwithstanding statutory reference to attorney general) (citing *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111, 121-23, 67 S. Ct. 1129, 91 L. Ed. 1375 (1947)); *State v. Taylor*, 653 S.W.2d 757, 760 (Tenn. Crim. App. 1983) ("[T]here is no requirement or mandate that the District Attorney General must *personally* perform any of the duties relegated to him by the Constitution or the Legislature. To the contrary, by implication and directly, the statutes carry the connotation that an Assistant District Attorney General may act in the stead of the Attorney General in whatever capacity he is called upon to serve."); *Public Utility Comm'n of Texas v. Cofer*, 754 S.W.2d 121, 124 (Tex. 1988) ("[W]hile all of the constitutional and statutory authority is vested in *one* Attorney General, he need not be personally involved in every case and may properly delegate his duties to his assistants. Even though he may choose for some reason to remove himself from a case, the Attorney General is still of counsel in every case where an assistant is of counsel.") (citations

omitted).[5] Given that the August 26, 2011 notice of appeal bears the name of the Attorney General — albeit not his signature — and in the absence of any evidence that the Attorney General has abdicated his authority to supervise Attorney Phelan, Attorney Holder, or any other Assistant Attorney General connected with this matter, we hold that the certification in the August 26, 2011 notice of appeal is sufficient for purposes of section 33(d)(2) notwithstanding the fact that it was not personally signed by the Attorney General.[6]

## C. Suppression of Gun, Ammunition, and Statements

With respect to the merits, the People primarily argue that the Superior Court erred when it granted the motion to suppress because Douglas had a right to question Murrell, and to search his person once he admitted to possessing a firearm.[7] Murrell, however, responds to this argument in a single paragraph in his appellate brief — as opposed to 14 pages devoted to the section 33(d)(2) Attorney General certification issue — which states that this Court is compelled to affirm the July 28, 2011 Order pursuant to the decisions of the United States Court of Appeals for the Third Circuit in *Ubiles* and *United States v. Lewis*, 672 F.3d 232 (3d Cir. 2012).

As in this case, the "stop and frisk" in *Ubiles* originated after a member of the public informed a law enforcement officer that a man standing on the sidewalk at a crowded event possessed a gun, 224 F.3d at 215, with

---

[5] *But see W.R. Grace*, 526 F.3d at 506 (stating, in dicta and without citation to any legal authority, that a 18 U.S.C. § 3731 certification must be made "by a United States Attorney (personally, not by an Assistant United States Attorney)"). The Ninth Circuit, however, has recently implied that the authority to certify an interlocutory appeal may be delegated. *See United States v. Weyhrauch*, 548 F.3d 1237, 1241 (9th Cir. 2008), *vacated on other grounds*, 130 S.Ct. 2971, 177 L. Ed. 2d 705 (2010).

[6] Given our holding that the certification contained in the August 26, 2011 notice of appeal was sufficient to comply with section 33(d)(2), it is not necessary or proper for us to resolve any of the other issues identified in our March 2, 2012 Order.

[7] Additionally, the People argue — without citing to any legal authority or portions of the suppression hearing transcript — that Murrell somehow consented to the confiscation of his firearm and ammunition. However, the record — which consists solely of Douglas's own testimony — clearly reveals that the firearm and ammunition were taken by Douglas after he stopped Murrell, ordered him to place his hands on the hedge, and then proceeded to search his person. In fact, Douglas himself testified that Murrell was not free to leave at this point. Under these circumstances, we cannot discern how the incident could possibly be construed as Murrell consenting to the police seizing the firearm and ammunition.

the Third Circuit holding that "[i]t is not necessarily a crime to possess a firearm in the Virgin Islands; nor does a mere allegation that a suspect possesses a firearm, as dangerous as firearms may be, justify an officer in stopping a suspect absent the reasonable suspicion required by *Terry*," and ultimately concluding that reasonable suspicion is not present in the absence of any evidence that the defendant illegally possessed the gun or was otherwise engaging in criminal activity. *Id.* at 217-18 (citations omitted). But in the years after *Ubiles* was decided, the Third Circuit found constitutional a "stop and frisk" initiated based solely on a tip that an individual possessed a firearm. *See United States v. Gatlin*, 613 F.3d 374, 378-79 (3d Cir. 2010); *United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000). In *Lewis*, the Third Circuit distinguished *Ubiles* from *Gatlin* by noting that the decisions were based on Virgin Islands and Delaware local law, respectively.

> For cases arising out of the Virgin Islands . . . the treatment afforded firearms under territorial law continues to be of paramount importance in our analysis. In *United States v. Gatlin*, 613 F.3d 374 (3d Cir. 2010), an officer received a tip from a reliable source that a man was walking on a street in Wilmington, Delaware with a firearm in his jacket. *Id.* at 376-77. Based on the man's description, officers responded to the area where the informant indicated that the man could be found. *Id.* at 377. Officers located the man, handcuffed him, and patted him down, finding an unlicensed handgun in violation of Delaware law. *Id.*
>
> We noted that the facts in *Gatlin* resembled those in *Ubiles* — i.e., the sole evidence to support the *Terry* stop was a tip about a firearm — but nonetheless concluded that reasonable suspicion existed to frisk the defendant for weapons. *Id.* at 378-79. Critical to our analysis was the presumption under Delaware law, unlike in the Virgin Islands, that an individual has no license to carry a concealed firearm. *Id.* The reliable tip coupled with the presumption of illegality provided officers with reasonable suspicion to conduct an investigatory stop within the confines of *Terry*. *Id.* at 379.
>
> . . . It is lawful for certain individuals in the Virgin Islands to carry a firearm provided that a license is obtained. *See* V.I. CODE ANN. tit. 23, § 454. Ubiles recognized that the possession of a firearm in the Virgin Islands, in and of itself, does not provide officers with reasonable suspicion to conduct a *Terry* stop. 224 F.3d at 217 ("[A] mere allegation

that a suspect possesses a firearm, as dangerous as firearms may be, [does not] justify an officer in stopping a suspect absent the reasonable suspicion."). Indeed, Virgin Islands law contains no presumption that an individual lacks a permit to carry a firearm. *Gatlin*, 613 F.3d at 378-79. As we observed in *Gatlin*, the Government bears the burden of proof in the Virgin Islands that the defendant had no license for a recovered firearm. *Id.* at 379 (citing *United States v. McKie*, 112 F.3d 626, 630, 36 V.I. 367 (3d Cir. 1997)).

*Lewis*, 672 F.3d at 239-40.

We agree with Murrell that, if this Court were to apply the *Ubiles* and *Lewis* decisions, there is no question that the Superior Court correctly granted Murrell's motion to suppress. As in *Lewis* and *Ubiles*, there is absolutely no evidence in the record that Douglas received any information that Murrell possessed an unlicensed firearm or a firearm with an altered serial number, nor is there any evidence from which Douglas could have inferred that Murrell was engaging in criminal behavior. On the contrary, Douglas unambiguously testified at the suppression hearing that he only had reason to believe that Murrell lacked a license after Murrell told him that he did not have one, which did not occur until *after* Murrell had been told to place his hands on the hedge and Douglas obtained the loaded firearm out of Murrell's pocket. (J.A. 53-54.) Therefore, were we to concur with the Third Circuit's conclusion that local Virgin Islands law does not contain a presumption that an individual lacks a permit to carry a firearm, we would easily conclude that the Superior Court committed no error in granting the motion to suppress the firearm and the ammunition.[8]

---

[8] In its appellate brief, the People emphasize that, when evaluating the legality of a *Terry stop*, a court must consider the totality of the circumstances. However, as the Third Circuit also explained in *Lewis*,

> The Government misapprehends the totality of the circumstances standard. Facts known to an officer at the time of a *Terry stop* must bear individual significance if they are to be considered in the aggregate. *See United States v. Mathurin*, 561 F.3d 170, 174-75, 51 V.I. 1196 (3d Cir.2009) ("We will examine the factors separately to address their individual significance, and then in the aggregate to assess the agents' reasonable suspicion under our totality of the circumstances inquiry.").

As we explained in *supra* Part III.A., based on the testimony at the suppression hearing, the illegal tints on the vehicle were an impermissible *ex post facto* justification for the traffic stop. The informant's tip about the white Toyota Camry is equally of no aid to the

■ Nevertheless, we disagree with Murrell that the *Ubiles* and *Lewis* decisions "completely foreclose the issue of the correctness of the trial court's suppression order," (Appellee's Br. 18), for "this Court is not required to follow the Third Circuit's interpretation of a local Virgin Islands statute when the Third Circuit's decision was rendered prior to this Court having the opportunity to interpret the statute in the first instance." *Defoe v. Phillip*, S.Ct. Civ. No. 2009-0007, 2012 V.I. Supreme LEXIS 4, at *9 (V.I. Jan. 5, 2012) (citing *Pichardo v. V.I. Comm'r of Labor*, 939 613 F.3d 87, 89, 53 V.I. 936 (3d Cir. 2010) and *Gov't of the V.I. v. Lewis*, 620 F.3d 359, 364 n.5, 54 V.I. 882 (3d Cir. 2010)). As the Third Circuit recognized when it distinguished these cases from *Gatlin* and *Valentine*, the outcomes of *Lewis* and *Ubiles* were determined by the Third Circuit's holding that local Virgin Islands law — unlike Delaware and other jurisdictions — does not contain a presumption that an individual lacks a permit to carry a firearm, based on the burden of proof on the government to prove one lacks a license. Therefore, contrary to the implication in Murrell's appellate brief, this Court is not bound by the *Ubiles* and *Lewis* decisions, and may determine whether such a presumption of illegality exists.

In this case, we note that the Superior Court, when it announced its oral decision at the July 19, 2011 suppression hearing, recognized the existence of title 23, section 488 of the Virgin Islands Code, which authorizes a law enforcement officer to question and search an individual who the officer believes "may be wearing, carrying, or transporting a firearm in violation of section 454 of [title 23,]" provided that the officer also believes the person may be presently dangerous, that it is impracticable to obtain a search warrant, and that it is necessary for the officer's protection or the protection of others to take "swift measures to discover whether [the] person is, in fact, wearing, carrying, or transporting a firearm." 23 V.I.C. § 488(a). If the officer discovers during the stop and search that the individual possesses a firearm, the statute unambiguously places the burden upon the individual to "produce

---

Government. We cannot consider in the aggregate these two facts that individually have no relevance to our totality of the circumstances assessment.

672 F.3d at 240-41. If this Court were to follow the *Ubiles* and *Lewis* decisions, the factors emphasized by the People — that Douglas had reason to believe that Murrell possessed a firearm and had a right to ask Murrell if he had a firearm — are irrelevant, in that mere possession of a firearm, without more, is not a crime.

evidence that he is entitled to so wear, carry, or transport the firearm pursuant to section 454." 23 V.I.C. § 488(b).[9]

Prior to *Ubiles*, one Superior Court judge observed that "[r]ead together, the plain language of the statutes [23 V.I.C. §§ 488 and 14 V.I.C. § 2253(a)] suggests a legislative intent to make the mere carrying of a firearm illegal." *Gov't v. King*, 31 V.I. 78, 84 (V.I. Super. Ct. 1995).

---

[9] The statute reads, in its entirety, as follows:

(a) Any law enforcement officer who, in the light of his observations, information and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a firearm in violation of section 454 of this title, (ii) by virtue of his possession of a firearm, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a firearm, such officer may:

(1) approach the person and identify himself as a law enforcement officer;

(2) request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title; and

(4) if the person does not give an explanation which dispels, the reasonable belief which he had, he may conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a firearm. The police officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner and sex of the person approached.

(b) In the event that the officer discovers the person to be wearing, carrying, or transporting a firearm, he may demand that the person produce evidence that he is entitled to so wear, carry, or transport the firearm pursuant to section 454 of this title. If the person is unable to produce such evidence, the officer may then seize the firearm and arrest the person.

(c) Nothing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law.

Any police officer sued in a civil action for conducting a search or seizure pursuant to this section which is alleged to be unreasonable and unlawful shall, upon his request, be defended in said action and any appeals therefrom, by the Attorney General.

Every police officer who conducts a search or seizure pursuant to this section shall, within twenty-four hours after such search or seizure, file a written report with the U.S. Virgin Islands Police Department (V.I.P.D.) describing the circumstances surrounding the search or seizure and the reasons therefor on a form prescribed by the Police Commissioner. Such report shall include the name of the person searched.

23 V.I.C. § 488.

Likewise, after *Ubiles* and before *Lewis*, several Superior Court judges have recognized the potential implications of section 488. *See, e.g., People v. Matthew*, 55 V.I. 380, 393 (V.I. Super. Ct. 2011) ("The language under 23 V.I.C. § 488 is clear concerning an officer['s] encounter with someone who has a firearm. Prior to arrest, and in the absence of evidence supporting probable cause that other criminal activity is afoot, the police must inquire of the person as to whether he has a license to possess a firearm."); *People v. Fredericks*, 54 V.I. 161 at 166 (V.I. Super. Ct. 2011) ("[I]n the Virgin Islands when investigating crimes involving firearms, the authority of law enforcement officers to conduct a limited search of a suspect is governed by V.I. CODE ANN. tit. 23, § 488."); *People v. Samuel*, Super. Ct. Nos. 556/2009, 557/2009 (STX), 2010 V.I. LEXIS 80, at *17 (V.I. Super. Ct. Nov. 12, 2010) (noting that "Virgin Islands law expressly authorizes law enforcement officers to investigate a person's possession of a firearm" and holding that "Section 488 plainly lays out the procedures of an officer['s] encounter with someone who has a firearm."). The Third Circuit, however, never cited or discussed section 488 or these Superior Court decisions in either *Ubiles* or *Lewis*.[10] Significantly, section 488 contains virtually identical language to the former article 27, section 36D of the Maryland Code,[11] and Maryland appellate courts have held

---

[10] The Third Circuit referenced the *King* decision in *United States v. McKie*, 112 F.3d 626, 631, 36 V.I. 367 (3d Cir. 1997), in which it noted that a different portion of the *King* opinion — relating to whether the government was required to prove that a defendant possessed an unlicensed firearm for more than 24 hours — was no longer operable due to a subsequent amendment to section 470 of title 23. However, section 488 has been in existence since 1975 and has not been amended, and the portion of the *King* decision discussing its implications was not addressed by the Third Circuit.

[11] Effective October 1, 2002, this enactment was renumbered as § 4-206 of the Maryland Code, without substantive change. The present statute provides, in its entirety, as follows:

(a) Limited search —

(1) A law enforcement officer may make an inquiry and conduct a limited search of a person under paragraph (2) of this subsection if the officer, in light of the officer's observations, information, and experience, reasonably believes that:

(i) the person may be wearing, carrying, or transporting a handgun in violation of § 4-203 of this subtitle;

(ii) because the person possesses a handgun, the person is or presently may be dangerous to the officer or to others;

(iii) under the circumstances, it is impracticable to obtain a search warrant; and

(iv) to protect the officer or others, swift measures are necessary to discover whether the person is wearing, carrying, or transporting a handgun.

that this statute permits a search of any individual suspected of possessing a concealed gun, without also requiring reasonable suspicion that the gun

---

(2) If the circumstances specified under paragraph (1) of this subsection exist, a law enforcement officer:

(i) may approach the person and announce the officer's status as a law enforcement officer;

(ii) may request the name and address of the person;

(iii) if the person is in a vehicle, may request the person's license to operate the vehicle and the registration of the vehicle;

(iv) may ask any question and request any explanation that may be reasonably calculated to determine whether the person is unlawfully wearing, carrying, or transporting a handgun in violation of § 4-203 of this subtitle; and

(v) if the person does not offer an explanation that dispels the officer's reasonable beliefs described in paragraph (1) of this subsection, may conduct a search of the person limited to a patting or frisking of the person's clothing in search of a handgun.

(3) A law enforcement officer acting under this subsection shall take into account all circumstances of the occasion, including the age, appearance, physical condition, manner, and gender of the person approached.

(b) Seizure of handgun and arrest —

(1) If the officer discovers that the person is wearing, carrying, or transporting a handgun, the officer may demand evidence from the person of the person's authority to wear, carry, or transport the handgun in accordance with § 4-203(b) of this article.

(2) If the person does not produce the evidence specified in paragraph (1) of this subsection, the officer may seize the handgun and arrest the person.

(c) Written report. —

(1) A law enforcement officer who conducts a search or seizure in accordance with this section shall file a written report with the law enforcement officer's employer unit within 24 hours after the search or seizure.

(2) The report shall be on a form that the Secretary of Public Safety and Correctional Services prescribes, shall include the name of the person searched, and shall describe the circumstances surrounding and the reasons for the search or seizure.

(3) A copy of the report shall be sent to the Secretary of State Police.

(d) Civil actions. — On request of a law enforcement officer, the Attorney General shall defend the officer in a civil action, including any appeal, in which the officer is sued for conducting a search or seizure under this section that is alleged to be unreasonable and unlawful.

(e) Construction of section. —

(1) This section may not be construed to limit the right of a law enforcement officer to conduct any other type of search or seizure or make an arrest that is otherwise authorized by law.

(2) The provisions of this section are in addition to and not limited by the provisions of Title 2 of the Criminal Procedure Article.

MD. CODE ANN., Criminal Law § 4-206.

is not licensed. *See Allen v. State*, 85 Md. App. 657, 584 A.2d 1279, 1284-85 (Md. Ct. App. 1991) (permitting search under article 27, section 36D despite officer's lack of knowledge, and failure to ask questions calculated to determine, whether defendant was licensed to carry a gun); *see also Quince v. State*, 319 Md. 430, 572 A.2d 1086, 1087-88 (Md. 1990) (holding "stop and frisk" of individual who police were told was carrying a firearm was permissible, even though police were not told that gun was unlicensed and individual cooperated and made no unusual movements). Therefore, section 488[12] may provide authority for the proposition that the Legislature intended for law enforcement officers to presume illegality when informed that an individual who is not obviously authorized to carry a firearm is carrying a firearm in public, notwithstanding the fact that the government, in a criminal prosecution, would bear the burden of proving that the firearm is unlicensed.[13]

 Notwithstanding the fact that legitimate, non-frivolous arguments exist to depart from *Ubiles* and *Lewis*, and despite the existence of section 488, we decline to resolve this issue as part of this appeal because the People have failed to argue, either before the Superior Court or in their

---

[12] We recognize that section 488 may itself be subject to potential constitutional challenges. Although the Superior Court in this case concluded that section 488 imposes a higher standard than *Terry*, one could argue that the provision that "[n]othing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law," 23 V.I.C. § 488(c), implies that the purpose of the statute is to impose lower standards for a firearm search than *Terry*. While it is not necessary for this Court to consider this issue as part of this appeal, we note that Maryland courts have found article 27, section 36D of the Maryland Code constitutional by holding that the language simply codifies *Terry* in order "to allow a police officer to conduct a limited search for unlicensed concealed handguns under a standard of reasonable suspicion, rather than a standard of probable cause." *Allen*, 584 A.2d at 1285.

[13] We also note that local Virgin Islands firearm licensure laws may not necessarily be significantly different from Delaware law, which the Third Circuit concluded provides a presumption of illegality. At first glance, it may seem that Delaware imposes greater restrictions on the carrying of concealed weapons than the Virgin Islands, in that the pertinent statute imposes numerous requirements not found in the Virgin Islands Code, such as requiring applicants to submit character affidavits and to file proof of completion of firearms training courses. *See* DEL. CODE ANN. tit. 11, § 1441. However, while chapter 5 of title 23 imposes several limitations on who may attain a license to possess a firearm, section 485 vests the Police Commissioner with the authority to impose additional rules and regulations that, "upon approval by the Governor, shall have the force and effect of law." We note that several of the additional requirements found in the Delaware statute have also been adopted in the Virgin Islands, but are found in these regulations rather than in the Virgin Islands Code itself. *See, e.g.*, 23 V.I.R.R. § 485-6(a)(4)(D) (completion of recognized course in firearm safety).

appellate brief, that *Ubiles* or *Lewis* were wrongly decided and that this Court should hold that a presumption exists under section 488 that an individual lacks a permit to carry a firearm in the Virgin Islands.[14] The fact that neither the People nor Murrell adequately address this issue in their appellate briefs does not mandate that we abstain from resolving this issue, "because the parties cannot stipulate to the law, especially in a situation such as this where the decision may impact other pending or future cases." *Matthew v. Herman*, S.Ct. Civ. No. 2009-0074, 2012 V.I. Supreme LEXIS 43, at *13 (V.I. May 15, 2012). Rather, we decline to re-examine *Ubiles* and *Lewis* in this case because, if we were to reach the issue *sua sponte* and without the benefit of briefing or argument by the parties, our holding would not affect the outcome of this appeal, since the People's forfeiture of the issue would compel us to review solely for plain error. As explained earlier, if we were to endorse the reasoning of *Ubiles* and *Lewis*, this Court would affirm the July 28, 2011 Suppression Order because this case is factually indistinguishable from *Ubiles*. But even if we were to depart from the *Ubiles* and *Lewis* decisions and hold that police officers may initiate a "stop and frisk" upon receiving credible information that an individual is in a public place with a concealed firearm, the ultimate result would still remain unchanged. Since *Ubiles* was — and remains — binding on the Superior Court until and unless this Court expressly declines to adopt its interpretation of local law, the People cannot satisfy the second prong of the plain error test, that any error be "plain." *See Murrell v. People*, 54 V.I. 338, 366 (V.I. 2010) (explaining that an error is "plain" only if the error is obvious based on binding precedent or text of statute) (quoting *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003)). Therefore, we will affirm the July 28, 2011 Order,[15] but decline to decide, as part of this appeal, the broader issue of whether this Court should continue to follow the Third Circuit's

---

[14] In fact, the People have not cited to *Lewis* at all in their appellate brief, and cite to *Ubiles* only twice — once in the statement of facts to note that *Ubiles* was referenced by the Superior Court, and later to note that the Attorney General considered *Ubiles* when deciding to make the section 33(d)(2) certification. In other words, while Murrell has declined to address this issue due to his incorrect belief that *Lewis* and *Ubiles* are binding on this Court, it appears the People have made a conscious decision not to even attempt to address these authorities in their brief, despite acknowledging that *Ubiles* formed the basis for the Superior Court's decision.

[15] We recognize that, in this case, the Superior Court suppressed Murrell's statements to the police during the search as fruit of the poisonous tree. However, the United States Supreme

interpretation of local law concerning firearms possession as addressed in *Ubiles* and *Lewis*.

## III. CONCLUSION

Although the phrase "the Attorney General conducting the prosecution" in title 4, section 33(d)(2) likely refers to the Attorney General rather than a trial prosecutor, the Attorney General was not required to personally sign the mandatory certification, for title 3, section 113(b) permits the Attorney General to delegate this and other duties to Assistant Attorneys General. As to the merits, the "stop and frisk" of Murrell was unquestionably unlawful under *Ubiles* and *Lewis*, but we hesitate to fully endorse those decisions given that legitimate arguments exist for departing from them. Nevertheless, since the outcome of this appeal would not be impacted by the continuing vitality of *Ubiles* and *Lewis*, we affirm the July 28, 2011 Order without resolving whether section 488 of title 23 should dictate a different result.

---

Court has held that a defendant is not entitled to automatic suppression of all incriminating statements made during the course of an illegal stop. *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Rather, to determine whether suppression is warranted, a trial court must consider and weigh several factors on the record, including, but not necessarily limited to, (1) whether *Miranda* warnings were given; (2) the temporal proximity of the statements and the Fourth Amendment violation; (3) the existence of intervening causes between the violation and the statements; and (4) the purpose or flagrancy of the official misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975). Nevertheless, while this Court possesses the discretion to weigh these factors in the first instance if the record contains "amply sufficient detail and depth from which the determination may be made," id. at 604 (citing *Morales v. New York*, 396 U.S. 102, 90 S. Ct. 291, 24 L. Ed. 2d 299 (1969)), we decline to do so because the People have waived this issue by failing to raise it in its appellate brief. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . not briefed . . . are deemed waived for purposes of appeal . . . .").