**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**QUANZA J. HEATH, Defendant**

Case No. SX-14-CR-033

Superior Court of the Virgin Islands

Division of St. Croix

July 10, 2015

MOLLOY, *Judge of the Superior Court*

**MEMORANDUM OPINION**

(July 10, 2015)

**THIS MATTER** comes before the Court on Defendant's Motion to Suppress filed on June 5, 2014. The People of the Virgin Islands (the

"People") did not file an opposition. The Court held a suppression hearing on September 16, 2014. For the reasons stated below, the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the evening of January 24, 2014, at approximately 7:00 p.m., Detective Leon Cruz ("Detective Cruz") and Lieutenant Dino Herbert ("Lieutenant Herbert") were present at Quanza Heath's residence at #176 Hannah Rest, Frederiksted, VI, to conduct a "follow-up investigation." The officers were outfitted in civilian clothing and driving an unmarked police vehicle. At the suppression hearing, Detective Cruz testified that the officers traveled to the residence to advise Heath of information they had received about his safety. However, Heath was not at the residence when the officers arrived. Lieutenant Herbert proceeded to question Heath's uncle, Armory Winston, about Heath's whereabouts. While Lieutenant Herbert questioned Winston, Detective Cruz observed Heath's vehicle drive past the residence. Lieutenant Herbert asked Winston if the vehicle belonged to Heath. Winston responded that he did not know. Detective Cruz then confirmed that the vehicle did in fact belong to Heath. Detective Cruz and Lieutenant Herbert immediately got into their unmarked police car and pursued the vehicle.

The officers followed the vehicle as it made a left turn into a residential area with a dead end. When the officers made the left turn onto the dead-end road, the vehicle was near the dead end and positioned in a direction facing the officers and adjacent to a bush area. The vehicle's headlights were turned off. At the suppression hearing, Detective Cruz testified that the unmarked police vehicle's headlights were turned on and that the officers could see that the vehicle was being operated by Heath, who was "hunched down," and the only person inside the vehicle. Detective Cruz then exited the unmarked police vehicle and while standing between the door and the body of the vehicle, said: "Hey, this is the police. We just want to talk to you." Heath immediately exited the vehicle and fled into the bush area. After approximately twenty seconds, Heath reappeared and was ordered by the officers to approach their vehicle. Heath complied with the officers' order and was patted down by Detective Cruz. Detective Cruz then asked Heath if he dropped a gun in the bush. Heath did not respond. Detective Cruz testified that Heath was not free to leave when he returned from the bush area and was being detained until the area was searched.

At approximately 7:30 p.m., the officers called Detective Darius George ("Detective George") to the scene to conduct a forensic investigation. At the suppression hearing, Detective George testified that when he arrived on the scene, Heath was in the backseat of the unmarked police vehicle and not handcuffed. Detective George also testified that Detective Cruz was sitting in the vehicle with Heath at the time.

The officers then called Officer Jason Viveros ("Officer Viveros") to request a K-9 Unit at Hannah's Rest at approximately 7:30 p.m. When Officer Viveros arrived, he observed Detective Cruz with Heath. During the suppression hearing, Officer Viveros testified that when he commenced his search, Heath was standing outside a police vehicle. However, later in his testimony, Officer Viveros stated that he saw Heath in the backseat of a police vehicle. Officer Viveros and his K-9 partner searched the immediate bush area and found a firearm. Detective Cruz then arrested Heath, placed him in handcuffs, and put him in the backseat of the unmarked police car. Detective Cruz testified that Heath was not under arrest at any point before that time.

Following Officer Viveros and the K-9 Unit's search of the bush area and the discovery of the firearm, Detective George photographed the firearm and surrounding area, and then collected it. Detective George determined that the weapon was loaded. Detective George conducted a further search and found a bag of ammunition hanging on the bushes, approximately three to four feet from the driver's door of Heath's vehicle. At that point, Heath was transported to the police station where he was advised of his *Miranda* rights and charged with unauthorized possession of an unlicensed firearm. The officers later conducted a firearm records check and confirmed that Heath was not licensed to carry a firearm in the U.S. Virgin Islands.

On February 7, 2014, the People filed an Information charging Heath with the following criminal offenses: (1) unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a); (2) unauthorized possession of ammunition in violation of 14 V.I.C. § 2256(a); (3) failure to report a firearm in violation of 23 V.I.C. § 470(a); (4) alteration of identifying marks on a firearm in violation of 23 V.I.C. § 481(a); and (5) carrying or using a dangerous weapon in violation of 14 V.I.C. § 2251(a)(1).

On June 5, 2014, Defendant filed a motion requesting the Court suppress the evidence seized from him as a result of the stop and search as well as statements made during the search. The Court held a

suppression hearing on September 16, 2014. Officer Jason Viveros, Detective Leon Cruz, and Detective Darius George testified at the suppression hearing.

## II. LEGAL STANDARD

■ The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citing *Katz v. United States*, 389 U.S. 347, 356-57, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). Warrantless searches, however, "are *per se* unreasonable under the Fourth Amendment subject to a few specifically established and well delineated exceptions." *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Horton v. California*, 496 U.S. 128, 133, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990) (opining that the general rule is that warrantless searches are presumptively unreasonable).

■ "As a general rule, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). That burden, however, shifts to the government to show that the search or seizure was reasonable once the defendant has established a basis for his motion, i.e. the search or seizure was conducted without a warrant. *Id.* It is undisputed that the police officers conducted a search and seizure of the Defendant without a warrant. Accordingly, the People bear the burden of proof to demonstrate that the actions of the police officers were reasonable under the Fourth Amendment.

## III. DISCUSSION

Heath contends that the information the arresting officers had at the time of his arrest was insufficient to support the seizure. Specifically, Heath argues that the officers had neither probable cause nor reasonable suspicion to conduct a lawful investigatory stop of him after he fled. Heath also contends that the police officers stopped him without a particularized basis for believing that he was engaged in criminal activity. Heath maintains that the officers did not make a legitimate traffic stop supported by probable cause or reasonable suspicion. The People contend that the officers possessed reasonable suspicion to stop and frisk Heath. The People further argue that the firearm and ammunition should not be

suppressed because they were recovered in an "open field" and after Heath abandoned the items. Because the actions conducted by law enforcement occurred without a warrant, the People must demonstrate that the investigative stop and all subsequent Fourth Amendment events fit under an exception to the warrant requirement.

■ One such exception is an investigatory stop conducted in accordance with *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Under *Terry*, law enforcement officers may conduct an investigatory stop when justified by a reasonable suspicion that an individual is engaged in criminal activity. *Terry*, 392 U.S. at 21, 28-31. Reasonable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21. An "officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Terry*, 392 U.S. at 27). The United States Supreme Court cautions that the concept of reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." *Sokolow*, 490 U.S. at 7. Consequently, "[c]alculating whether an officer has reasonable suspicion to warrant a stop and search is often an imprecise judgment." *Robertson*, 305 F.3d at 168. Accordingly, "[c]ourts give considerable deference to police officer's determinations of reasonable suspicion. . . ." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006). Thus, "[i]n determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Reasonable suspicion may be the result of several factors, including specialized knowledge and investigative inferences, personal observation of suspicious behavior, and information received from reliable sources. *Blyden v. People*, 53 V.I. 637, 649 (V.I. 2010) (citing *United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002)). Evidence obtained as the result of a *"Terry* stop" without the required level of reasonable suspicion must be suppressed as "fruit of the poisonous tree." *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)).

## A. The Investigatory Stop Occurred when Heath returned from the Bush Area and Approached the Unmarked Police Vehicle

█ The Fourth Amendment's protection extends to all seizures, including brief investigatory stops. *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010). A person is seized when there is either (a) "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful"; or (b) submission to "a show of authority." *California v. Hodari D.*, 499 U.S. 621, 626, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991). "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* at 628 (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). Whether an encounter is a seizure or not depends on the totality of the circumstances including "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. In this case, there is no indication that officers used physical force to restrain Heath when they first made contact with him. Therefore, the relevant inquiry here is at what point the officers' show of authority would have caused a reasonable person to believe he was not free to leave.

██ In this case, Detective Cruz and Lieutenant Herbert followed Heath in an unmarked police vehicle to a dead-end road. Upon turning down the road, the officers observed that Heath's vehicle was stopped in a direction facing the officers with its headlights turned off. The unmarked police vehicle's headlights remained on, allowing the officers to look into the vehicle, and observe that Heath was "stooped down" and the only person in the vehicle. Detective Cruz then exited the unmarked police vehicle and while standing between the door and the body of the vehicle, said "Hey, this is the police. We just want to talk to you." Heath did not comply with the officers' request, but instead exited the vehicle and fled into the nearby bush area. After approximately twenty seconds, Heath reappeared and was ordered by Detective Cruz to approach the unmarked police vehicle. It was at this time that Heath submitted to the officers' show of authority by complying with their order. Next, Detective Cruz patted Heath down. The Court finds that under the totality of the

88

circumstances, a reasonable person would find Officer Cruz's order to Heath to approach the unmarked police vehicle was a show of authority to which Heath submitted by approaching the vehicle. *Mendenhall*, 446 U.S. at 554 ("a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."). Thus, the Court finds that the police officers conducted an investigatory stop at the time Heath submitted himself to the officers' show of authority when they ordered him to approach the police vehicle. The Court likewise finds that any encounter between the officers and Heath prior to this time was not a stop under the Fourth Amendment.

### B. The Officers Had Reasonable Suspicion to Perform an Investigatory Stop

■ Having determined that Detective Cruz and Lieutenant Herbert seized Heath when he returned from the bush area, the Court must determine whether the officers had reasonable suspicion to justify the investigatory *Terry* stop. The Court relies on "certain commonsense conclusions about human behavior" to determine whether the officers possessed the required reasonable suspicion to stop Heath. *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). The presence of reasonable suspicion must be reviewed in light of the "totality of the circumstances" confronting an officer. *Id.* Therefore, the Court must consider what a reasonable police officer knowing the facts would conclude, "not whether it was reasonable for the Plaintiff to act as he did." *Scott v. City of Cleveland*, 555 F. Supp. 2d 890, 898 (N.D. Ohio 2008); *see also United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000) ("In many cases, the Supreme Court has found reasonable suspicion based on acts capable of innocent explanation."). The United States Supreme Court has explained that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000) ("Headlong flight — wherever it occurs — is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.").

■■ In this case, the officers observed Heath "hunched down" in his parked vehicle at night, take flight into the bush area when Detective Cruz identified himself, and return from the bush area approximately twenty

89

seconds later without any additional orders from the officers. The Court finds that Detective Cruz's observation of these actions, coupled with his years of investigative experience as a police officer, provided him with reasonable suspicion to justify the investigatory stop of Heath, in order to quell his suspicion that criminal activity was afoot. *See United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (citing *Wardlow*, 528 U.S. at 125) ("Indeed, the Supreme Court has never held that unprovoked flight alone is enough to justify a stop. The Supreme Court has held, however, that flight upon noticing police, plus some other indicia of wrongdoing, can constitute reasonable suspicion."); *see also United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (holding that officers are allowed to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them"). Based on the officers' observation of Heath hunched down in his vehicle at night, as well as Heath's flight upon the officers' identification of themselves, the Court finds that the officers had a reasonable belief that Heath retreated to the bush area under suspicious circumstances and, therefore, the officers had reasonable suspicion to conduct a lawful investigatory stop to quell that suspicion.

### C. The Officers' Detention of Heath Did Not Rise to the Level of an Arrest

When the officers stopped Heath, they had reasonable suspicion to believe that criminal activity was afoot. In order to quell their suspicion, the officers searched the bush area where Heath had fled. A search pursuant to a *Terry* stop must meet certain requirements. For instance, "[t]he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry*, 392 U.S. at 19. Additionally, "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Furthermore, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* Otherwise, a stop turns into an arrest, which requires probable cause in order to be lawful. *Id.* at 503 (finding suspect was "under arrest" when he was held for a prolonged period for what police officers claimed were merely investigatory purposes). In this case, the officers called out to Heath who fled to the bush area then returned. Heath argues he did not know that the men who

called out to him were police officers. Regardless, Heath submitted to them after fleeing to the bush area. Accordingly, the officers could infer from Heath's actions that he fled to the bush to do something associated with a completed or ongoing crime. The permissible time period for the investigatory stop was as long as it reasonably took to search the field where Heath retreated when approached. In this case, the officers initially detained Heath only as long as it took for them to search the bush area. On these facts, the officers did not detain Heath for an impermissibly long period and his mere detention did not turn into an arrest. Thus, the Court finds that the officers' actions in detaining Heath until they completed the search of the bush area was reasonable and did not violate Heath's constitutional rights.

### D. Officers Lawfully Recovered the Firearm in an Open Field

Heath argues that the information that Detective Cruz possessed at the time of the arrest did not provide the officers with reasonable suspicion to stop, nor probable cause to arrest him. The People assert that Heath voluntarily dropped the firearm in an open field upon exiting his vehicle and fleeing into the bush area. Since Heath had no property interest in the bush area and has not made a claim as to ownership of the firearm, the People maintain that the firearm was lawfully seized and provided officers with probable cause to arrest Heath. Based on the parties' contentions, the relevant inquiries before the Court are whether the officers could lawfully search the bush area, and whether the officers could lawfully seize the recovered firearm.

#### 1. Officers Lawfully Searched the Bush Area Adjacent to 167 Hannah's Rest

 While the Fourth Amendment requires a warrant to search a home and its surrounding curtilage, no warrant is required to enter and search the open areas which are neither the home nor its curtilage. U.S. CONST. amend. IV (specifically listing "home" among the things protected by the Fourth Amendment); *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984) (explaining that "courts have extended Fourth Amendment protection to the curtilage."). The proposition that the Fourth Amendment's protections do not extend to "open fields" was first enunciated by the United States Supreme Court in *Hester v. United States*, 265 U.S. 57, 44 S. Ct. 445, 68 L. Ed. 898 (1924).

This doctrine is based on the Court's determination that open areas do not fall within the ambit of the Fourth Amendment's protections. Instead, "no expectation of privacy legitimately attaches to open fields." *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 (1984). "[O]pen fields do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *Id.* at 179. Despite its name, "[a]n open field need be neither 'open' nor a 'field' as those terms are used in common speech." *United States v. Dunn*, 480 U.S. 294, 304, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987). Because open fields are not subject to the Fourth Amendment, law enforcement officers are not required to have reasonable suspicion, probable cause, or a search warrant to search an open field. *United States v. Danielson*, 2009 U.S. Dist. LEXIS 107257, at *3 (D.V.I. Nov. 17, 2009) (applying the open fields doctrine to determine that the "law enforcement officer did not require reasonable suspicion, probable cause, or a search warrant to search such property.").

At the suppression hearing, Detective Cruz testified that the address of the area where Heath fled and the officers subsequently searched was 167 Hannah's Rest. The bush area where the officers discovered the firearm was in front of a gated, abandoned house. Additionally, Detective Darius George testified that the area was overgrown with shrubs and owned by an individual that lives off-island. Since the bush area was not used for any residential purposes and society would not reasonably expect the same privacy in that area as within a home, the Court finds that the bush area at 167 Hannah's Rest was an open field. *See United States v. Thomas*, 2009 U.S. Dist. LEXIS 13395, at *24-25 (D.V.I. Feb. 19, 2009). Thus, the officers did not need reasonable suspicion nor probable cause to search it, and their search did not implicate Heath's reasonable expectation of privacy in anything protected under the Fourth Amendment.

### 2. The Officers' Seizure of the Firearm Was Lawful

Having determined that the officers lawfully searched the bush area, the Court must now turn to whether the officers' seizure of the firearm was lawful. Generally, the Fourth Amendment prohibits warrantless seizures of property. U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). One exception to this general rule is the "plain view doctrine." Under this doctrine, the warrantless seizure of incriminating evidence is permissible when three conditions are met: (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item's incriminating character must be immediately apparent; and (3) the officer must have a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128, 136-137, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990).

▆▆▆▆ In this case, the first condition is met. Because the bushy area at 167 Hannah's Rest is an open field, the officers did not violate the Fourth Amendment by searching it. Initially, the second condition does not appear to have been met in this case — that the item's incriminating nature be immediately apparent upon the officers discovering it. For instance, the officers did not testify that they knew at the time of the seizure that the Defendant was a felon and therefore could not legally possess a gun. *See United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (opining that mere possession of a firearm is not a crime in the Virgin Islands); *see also People of the Virgin Islands v. Murrell*, 56 V.I. 796 (V.I. 2012). Similarly, the officers did not claim that they noticed that the weapon had an obliterated or otherwise altered serial number when they retrieved it from the open field. Despite these seeming deficiencies, the United States Supreme Court has permitted officers to seize items which are "dangerous in themselves" — including weapons — even when their incriminating natures are not immediately apparent. *United States v. Frederick*, 152 Fed. Appx. 470, 472 (6th Cir. 2005) ("At the same time that the Court has permitted officers to seize items whose 'incriminating character' is 'immediately apparent' under the plain-view exception to the warrant requirement, it has permitted officers to seize 'objects dangerous in themselves.' " (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 472, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971) (plurality))); *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003) ("The Supreme Court also has indicated that the plain view exception permits the warrantless seizure of 'objects dangerous in themselves.' "). Accordingly, because the seized firearm in this case is an object dangerous in itself, the second condition has been met. The third condition has also been met in this case. The officers had a lawful right of access to the object itself because it was in

an open field when they retrieved it. *See United States v. Waterfield*, 2006 U.S. Dist. LEXIS 37630, at \*23-24 (S.D. Ohio June 8, 2006) ("Because an open field search is a search conducted from a lawful vantage point, evidence need only be immediately apparent as incriminating in order to be seized without a warrant."). Accordingly, because a legal search of the open field bush area yielded a firearm, the officers' seizure of that firearm was lawful under the open fields and plain view doctrines.[1] *United States v. Thomas*, 2009 U.S. Dist. LEXIS 13395, at \*25 (D.V.I. Feb. 18, 2009) ("Once the officers saw the firearms in the area searched, the seizure was proper under the open fields and plain view doctrines.").

## IV. CONCLUSION

After a review of the record and a hearing on this issue, the Court finds that the People have demonstrated the existence of recognized exceptions to the warrant requirement. At the September 16, 2014 suppression hearing, Officer Cruz provided specific, articulable facts leading to a reasonable suspicion that Heath was involved in criminal activity at the time he was stopped by the officers. Based on the officers' experience and observations, they had reason to believe that Heath may be armed and dangerous and thus lawfully conducted a pat-down of Heath. As the officers' suspicion was not quelled at that point, they conducted a lawful search of an open field where Heath initially fled. The officers discovered a firearm and ammunition pursuant to that lawful search and subsequently arrested Heath. Accordingly, for the reasons stated in this Memorandum Opinion, the Court will deny the Defendant's motion to suppress. An appropriate Order follows.

---

[1] Because the Court finds that the search and seizure of the firearm falls within the "open field" exception to the warrant requirement, the Court finds it unnecessary to determine whether Heath abandoned the firearm when he fled into the bush area.