NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-4511, 11-4512 & 11-4513
_____

UNITED STATES OF AMERICA

v.

QUALITY FORMULATION LABORATORIES, INC;
AMERICAN SPORTS NUTRITION INC; MOHAMED S. DESOKY,

Appellants  (No. 11-4511)

OMAR DESOKY,

Appellant  (No. 11-4512)

AHMAD DESOKY,

Appellant  (No. 11-4513)

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 2-10-cr-00699-001/2/4/5/6)
District Judge: Honorable Garrett E. Brown, Jr.

_____

Argued January 8, 2013

Before:  SCIRICA, AMBRO, and FUENTES, Circuit Judges

(Opinion filed: January 25, 2013)

Eric R. Breslin, Esquire
Marco A. Gonzalez, Jr., Esquire  (Argued)
Duane Morris

1037 Raymond Boulevard
One Riverfront Plaza, Suite 1800
Newark, NJ   07102

      Counsel for Appellants
      Quality Formulation Labs,
      American Sports Nutrition Inc.,
      Mohamed S. Desoky

Lisa Van Hoeck, Esquire  (Argued)
Office of Federal Public Defender
220 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ   08609

      Counsel for Omar Desoky, Appellant

Ricardo Solano, Jr., Esquire  (Argued)
Friedman, Kaplan, Seiler & Adelman
One Gateway Center, 25th Floor
Newark, NJ   07102

      Counsel for Ahmad Desoky, Appellant

Mark E. Coyne, Esquire
David E. Dauenheimer, Esquire
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ   07102

Paul J. Fishman
  United States Attorney
Stuart F. Delery
  Acting Assistant Attorney General
Patrick R. Runkle, Esquire  (Argued)
United States Department of Justice
Office of Consumer Litigation
P.O. Box 386
Washington, DC   20044

      Counsel for Appellee

---

OPINION

---

AMBRO, Circuit Judge

Appellants—three companies and three individuals—jointly appeal their convictions for criminal contempt and Appellants Omar and Ahmad Desoky appeal their sentences. We affirm the convictions but vacate and remand Omar and Ahmad Desoky's sentences for further findings.

## I.     Background

In 2010, following a civil suit, Mohamed Desoky and the three dietary supplement companies he ran—Quality Formulations Laboratories (QFL), American Sports Nutrition (ASN), and Sports Nutrition International (SNI)—entered into a court-approved Consent Decree with the federal Food and Drug Administration (FDA) halting production at the companies' Paterson, New Jersey manufacturing facility. The Consent Decree provided that

> [QFL, ASN, SNI and Mohamed Desoky] and each and all of their officers, agents, employees, successors, and assigns, and any persons in active concert or participation with any of them who receive notice of this Decree, are permanently restrained and enjoined . . . from directly or indirectly receiving, manufacturing, preparing, packing, labeling, and distributing at their plant located [in] . . . Paterson, New Jersey . . . or any new location(s) at which the Defendants receive, manufacture, prepare, pack, label, hold, or distribute articles of food, any article of food unless and until [described] conditions have been met[.]

App. at 78, Consent Decree, para. VII. It also required that

> [QFL, ASN, SNI and Mohamed Desoky] shall notify FDA in writing at least thirty (30) calendar days before any change [in] ownership, name, or character of their business, including reorganization, relocation, dissolution, assignment, or lease or

3

sale of the business or any asset of the business, such as buildings, equipment, or inventory, that may affect compliance with the obligations arising from this Decree.

*Id.* at 92, Consent Decree, para. XV.

Pursuant to the Consent Decree, the Paterson facility was shut down. Subsequently, manufacture of Appellants' products began at a facility in Congers, New York owned by ADH Health Products ("ADH"). On discovering this manufacturing, the FDA filed an order to show cause alleging criminal contempt by Mohamed, the three companies, and Mohamed's two sons and company employees, Ahmad and Omar. The Government alleged that Appellants willfully violated the Consent Decree by manufacturing products at the Congers facility. Appellants asserted a good faith defense, arguing that they contracted with ADH to manufacture QFL products, and they believed this third-party manufacturing was permitted by the Consent Decree.

Evidence presented at trial showed that the Congers facility manufactured QFL products, that Appellants sent raw material and equipment from Paterson to Congers, that former and current QFL employees worked on the products in Congers, and that QFL paid those employees in cash. Appellants did not disclose the activities at Congers to the FDA, including during two FDA inspections of the Paterson facility.

In addition to the activities at Congers, some raw ingredients were shipped to the Paterson facility, Ahmad brought some products manufactured at ADH to the Paterson facility to be shipped to customers, and Ahmad loaded two pallets of product from the Paterson facility to a truck owned by Performance Food Centers. The Government

4

alleged that these actions also violated the Consent Decree, and Appellants asserted a good faith defense to these charges as well.

Appellants were convicted of criminal contempt. Mohamed was sentenced to 40 months' imprisonment. Ahmad and Omar were each sentenced to 34 months' imprisonment, and the companies were fined. All appeal.[1]

## II.      Discussion

Appellants raise four challenges to their convictions and one to a sentencing enhancement applied to Omar and Ahmad Desoky.

### A.      Exclusion of Mary Richardson's Testimony

The District Court excluded Appellants' offered testimony of Mary Richardson, an expert consultant they hired to help them comply with the FDA's requirements in order to avoid and then lift the production shut-down. Richardson would not have testified about the charged conduct. Instead, her testimony related solely to Appellants' efforts to remediate the issues identified at the Paterson facility.

We review a district court's decision to admit evidence for abuse of discretion. *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003). Some evidence of earlier "good acts" evidence may be admissible to show a defendant lacked wrongful intent in later behavior. *See United States v. Garvin*, 565 F.2d 519, 522 (8th Cir. 1977) (evidence of correctly submitted applications for approximately 18 insurance policies admissible to show lack of intent to commit a scheme to defraud); *United States v. Shavin*, 287 F.2d

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

647, 654 (7th Cir. 1961) (evidence of properly submitted medical bills admissible to show lack of intent to defraud with later medical bills).

But Richardson's testimony is not of this sort. Evidence that Appellants undertook ameliorative efforts at Paterson does not negate the Government's theory—apparently adopted by the jury—that Appellants engaged in simultaneous efforts to improve the Paterson plant and to continue manufacturing elsewhere, with the latter actions violating the Consent Decree.

In addition, Richardson's testimony would have raised ancillary issues about the initial problems at Paterson and the Appellants' ameliorative efforts. The District Court concluded this outweighed any potentially probative value of the testimony. We agree, and, moreover, discern no harm in excluding Richardson's testimony. *United States v. Berrios*, 676 F.3d 118, 131 (3d Cir. 2012). Appellants provided uncontradicted evidence at trial about their efforts at Paterson, and their counsel were able to argue to the jury that these efforts demonstrated their lack of willfulness to violate the decree. In this context, the District Court did not err in excluding the testimony.

## B.    Jury Instruction on a Good Faith Defense

Appellants also challenge two aspects of the jury charge on their good faith defense. They argue that the Court improperly instructed the jury: (1) that an honest misunderstanding of the order must be plausible; and (2) that a defendant does not act in good faith if he also knowingly made false statements, representations, or purposeful omissions. The first part we review *de novo* because Appellants objected to the language at trial. *United States v. Berrios*, 676 F.3d at 136. Appellants contend that we should

6

review the false statements instructions *de novo* because they omit key language in their requested charge. While we doubt that merely requesting an instruction contrary to the one given sufficiently informs the Court of the specific objection, thus preserving the issue for appeal, Fed. R. Crim. P. 30(d); *United States v. Russell*, 134 F.3d 171, 178–79 (3d Cir. 1998), we discern no error under either a *de novo* or plain error review.

The language used by the District Court on plausibility comes from our analysis of a good faith defense in *Taberer v. Armstrong World Industries, Inc.*, 954 F.2d 888, 909 (3d Cir. 1992). Although Appellants allege error in this instruction, we consider jury instructions as a whole, and here find that the jury was properly instructed that a defendant did not commit criminal contempt if he acted under an honest, although incorrect, misunderstanding of the court order. *United States v. Gross*, 961 F.2d 1097, 1103 (3d Cir. 1992) ("[T]he good faith instruction [i]s simply a reiteration that the government must carry its burden in demonstrating that the accused acted knowingly and willfully . . . ."). We also find no error in the Court's instruction that a defendant does not act in good faith if he makes false statements, representations, or purposeful omissions. As such, there is no support for Appellants' argument that the jury might have determined that they were not entitled to a good faith defense because of a false statement or omission unrelated to the charged conduct.

## C.  Sufficiency of the Evidence on the Aiding and Abetting Charge

Omar and Ahmad challenge the sufficiency of the evidence that they aided and abetted the other Appellants' failure to notify the FDA of the companies' relocation from Paterson to Congers. When reviewing a jury verdict for insufficiency of evidence, we

7

consider the evidence in a light most favorable to the Government, and will affirm unless no reasonable jury could find the essential elements of the charged offense beyond a reasonable doubt. *United States v. Gatlin*, 613 F.3d 374, 380 (3d Cir. 2010). Aiding and abetting has four elements. "First, the person who is being aided must be intentionally committing a crime; second, the aider or abettor must know that the other is committing a crime; third, the aider or abettor must have the purpose to aid that other to commit the crime; and, finally, fourth, the aider must in fact render aid or assistance." *United States v. Nolan*, 718 F.2d 589, 592 (3d Cir. 1983). Sufficient evidence was presented at trial for a reasonable jury to conclude that all four elements were met. Omar and Ahmad knew that Mohamed had failed to inform the FDA of the move to Congers, a violation of the Consent Decree, and they successfully assisted him and the other Appellants in concealing the relocation.

### D. Closing Arguments

Appellants also argue that the prosecutors made a number of improper statements during closing argument. We review a district court's ruling on contemporaneous objections to the statements for abuse of discretion. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). To determine whether a district court abused its discretion, we must consider whether the prosecutor engaged in misconduct, and, if so, whether the remarks were harmless. *United States v. Rivas*, 493 F.3d 131, 139–40 (3d Cir. 2007). We review statements to which Appellants did not object for plain error. *Brennan*, 326 F.3d at 182. Although we are troubled by the prosecutor's reference to defense counsels' attack on a witness's credibility as "disgusting" and "ridiculous," we do not think this

8

statement alone, or in combination with the other challenged comments, prejudiced Appellants. The other challenged comments do not amount to misconduct, nor have Appellants shown prejudice as a result of these statements, alone or in combination.

### E. Sentencing Enhancement Applied to Omar and Ahmad

Omar and Ahmad also challenge the District Court's application of a three-level enhancement under section 3B1.1(b) of the United States Sentencing Guidelines. We review the factual findings supporting a district court's application of the Guidelines for clear error, and exercise plenary review over a court's interpretation of the Guidelines. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (*en banc*). Section 3B1.1(b) provides for an enhancement "[i]f the defendant was a manger or supervisor" and the criminal activity was extensive. U.S.S.G. § 3B1.1(b). It is applicable in two situations. First, the enhancement is proper if the defendant is a "manager, or supervisor of one or more other participants." § 3B1.1(b) cmt. 2. A participant is defined as someone who is "criminally responsible for the commission of the offense" even if not convicted. § 3B1.1(b) cmt. 1; *United States v. Katora*, 981 F.2d 1398, 1404–05 (3d Cir. 1992). In addition, the defendant must have more than legal management responsibility over the participant; he must have actually managed or supervised the participant's illegal conduct. *United States v. DeGovanni*, 104 F.3d 43, 44 (3d Cir. 1997) ("[O]ne is only a supervisor under U.S.S.G. § 3B1.1(c) when he is so involved in, and connected to, the illegal activity of others that he actually supervises their illegal conduct . . . ."). Alternately, the role enhancement applies if the defendant "exercised management

responsibility over the property, assets, or activities of a criminal organization." § 3B1.1 cmt. 2.

Here the District Court determined that the criminal activity was extensive, but did not make any factual findings regarding whether Omar or Ahmad managed or supervised the unlawful activities of a criminally culpable participant or that a criminal organization existed over which Omar and Ahmad exercised management responsibility. Moreover, the Court did not determine whether the two unindicted employees the Government asserts were managed or supervised were criminally culpable. To sort matters out, we remand so the District Court can make necessary factual determinations.

We thus affirm Appellants' convictions. However, we vacate Omar and Ahmad Desoky's sentences, and remand for further factual findings.