**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 15-2985
_____

UNITED STATES OF AMERICA,

v.

TERRELL HAYWOOD,
Appellant
_____

On Appeal from the United States District Court for the
District of New Jersey
(D.N.J. No. 2-14-cr-00462-001)
District Judge:  Honorable William J. Martini

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 3, 2016

Before:  CHAGARES, HARDIMAN, and SCIRICA, <u>Circuit</u> <u>Judges</u>.

(Filed: November 7, 2016)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Defendant Terrell Haywood appeals the District Court's denial of his motion to suppress a firearm that he contends was seized in violation of his Fourth Amendment rights. For the following reasons, we will affirm.

I.

We write solely for the parties and therefore recite only the facts that are necessary to our disposition.

At 1:00 p.m. on April 26, 2014, three police officers — Detective Hugo Ribeiro and Detective Sergeant Anthony DeMattia of the New Jersey State Police, and Essex County Detective Sergeant Brian Ruane — were patrolling a Newark, New Jersey neighborhood[1] in an unmarked truck. Detective Ribeiro was sitting in the rear passenger side of the vehicle, Detective DeMattia in the front passenger side, and Detective Ruane in the driver's seat. The truck was heading north on Hobson Street; as it passed through the intersection with Nye Avenue, Detective Ribeiro looked left and saw Haywood walking on the sidewalk east on Nye, toward the truck. Detective Ribeiro could clearly see the front of Haywood's body, who at this point was about "ten to twelve feet" away. Appendix ("App.") 81. Detective Ribeiro testified that Haywood was wearing "gray sweatpants, like a gray hooded shirt, and a black vest over the gray hooded shirt." App.

---

[1] The police were patrolling this particular neighborhood as part of the TIDE program, a state initiative designed to increase police presence in areas afflicted with high incidents of violent crime.

2

77. Detective Ribeiro claims that Haywood's vest was open[2] and that he could see a bulge in the right jacket pocket that he thought may be a handgun. As the truck drove through the intersection, Detective Ribeiro said to the others "something to the effect" of: "'I think he has a gun.' . . . 'Can we stop him?'" App. 79.

The truck then reversed back through the intersection, at which point Haywood was crossing the street. Haywood turned to look at the truck, and Detective Ribeiro noticed "what look[ed] to be a handle of a firearm" where he had seen the bulge, though he did not tell the other officers his observation. App. 79-80. Haywood continued to walk east on Nye, and the truck turned to pull up beside him.

Detective Ribeiro exited the rear passenger side of the vehicle and, as the other officers also exited, announced that they were police and instructed Haywood to put his hands up. None of the officers had their weapons drawn. Haywood immediately complied, raising his hands and dropping a water bottle that he had been carrying. Detective DeMattia took both of Haywood's hands and put Haywood's back against the truck, and then released a hand, according to Detective Ribeiro, to give Detective Ribeiro access to Haywood. Detective Ribeiro claims that he immediately reached into Haywood's right pocket and retrieved a handgun. Haywood contends that the evidence shows that Detectives DeMattia and Ribeiro frisked Haywood's waist area as if they did not know that there was anything in his pockets. After announcing that he had found a

---

[2] At the suppression hearing, Detective DeMattia also testified that Haywood's vest was open. According to Haywood, his vest was closed.

3

gun, Detective Ribeiro disarmed the weapon while Detectives DeMattia and Ruane tackled Haywood to the ground and arrested him.

A grand jury charged Haywood with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Haywood filed a motion to suppress all evidence seized by the police, alleging that he was subjected to an unconstitutional stop and frisk. The District Court held an evidentiary hearing on Haywood's motion on October 14, 2014, and on October 17, denied the motion in a ruling from the bench. App. 183-92. Haywood eventually pleaded guilty on the condition that he would be able to appeal the Court's decision.[3] On August 6, 2015, the Court sentenced Haywood to 92 months of imprisonment followed by three years of supervised release.

At the hearing, Detectives Ribeiro and DeMattia testified, and the parties introduced into evidence the handgun, Haywood's clothing, satellite images of Hobson Street and Nye Avenue, the police report, and a video recording taken from a security camera showing the arrest. The District Court watched the video "very closely" and found that it corroborated the officers' testimony.[4] App. 188. Considering the officers' "demeanor on the stand; forthrightness . . . ; [and] accuracy to which [they] recollect[ed]

---

[3] Haywood initially entered an unconditional guilty plea after the District Court's decision on the suppression motion, but later withdrew his plea and entered a new conditional plea pursuant to Federal Rule of Criminal Procedure 11(a)(2).

[4] Specifically, the Court found that the video shows Haywood's back and thus does not, as Haywood argues, show whether Haywood's vest was open or closed. The Court also found the video to show that Detective Ribeiro immediately reached for Haywood's right pocket to retrieve the gun.

the information that [they] testified to," the Court found the officers to be credible witnesses, noting that there were no material inconsistencies between the officers' testimony and the video. App. 189-90. Finally, the Court found that the basis for the stop was supported by the fact that the officers did not turn to pull alongside Haywood until after Detective Ribeiro was able to see Haywood and observe the bulge in his pocket.

## II.[5]

"A brief, investigatory stop is valid under Terry v. Ohio, 392 U.S. 1 (1968), 'when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" United States v. Gatlin, 613 F.3d 374, 378 (3d Cir. 2010) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Once a stop occurs, the officer may conduct "a reasonable search for weapons" if he has "reason to believe that he is dealing with an armed and dangerous individual." Terry, 392 U.S. at 27. If either the stop or the search is unreasonable, any evidence obtained as a result must be suppressed. Gatlin, 613 F.3d at 378 (citing United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010)).

When reviewing a district court's order denying a motion to suppress, we review findings of fact for clear error but exercise plenary review over legal determinations. United States v. Lewis, 672 F.3d 232, 236-37 (3d Cir. 2012). "A finding is clearly erroneous when although there is evidence to support it" we are "left with the definite

---

[5] The District Court had original jurisdiction over this matter pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over the District Court's denial of Haywood's motion to suppress under 28 U.S.C. § 1291.

5

and firm conviction that a mistake has been committed." United States v. Price, 558 F.3d 270, 276-77 (3d Cir. 2009) (quoting United States v. Pelullo, 173 F.3d 131, 135 (3d Cir. 1999)).  In other words, if the district court's finding is "plausible in light of the record viewed in its entirety," we will not reverse it even if we "would have weighed the evidence differently."  Id. (citation omitted).  On review, we construe the record in the light most favorable to the government.  United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002).

Haywood challenges only the District Court's factual findings at the evidentiary hearing.  His challenge is predicated on five arguments.  First, he was wearing a heavy sweatshirt on the day of his arrest — not a lightweight shirt as Detective Ribeiro testified — rendering it unlikely that Detective Ribeiro could have seen a bulge through the thick material.  Second, the video supports Haywood's contention that his vest was closed, which would have obstructed Detective Ribeiro's ability to see the gun.  Third, because of the truck's position relative to Haywood, Detective Ribeiro could not have had a view of Haywood's right side when he claims to have seen the handle protruding from Haywood's pocket.  Fourth, contrary to the officer's testimony, the video shows that Detective Ribeiro frisked Haywood's midsection instead of reaching immediately for the right pocket.  Fifth, the video shows that the officers looked "surprised" when they discovered Haywood's gun, indicating that they did not expect to find a weapon. Haywood contends that these inconsistencies compromise the testifying officers' credibility and undermine their claim that they stopped Haywood because Detective Ribeiro suspected that Haywood had a gun.

6

At best, Haywood posits interpretations of the evidence that are plausible alternatives to those offered by the government and found by the District Court. For example, the video does not clearly show whether Haywood's vest was open or closed, or whether Detective Ribeiro first frisked Haywood's midsection instead of reaching directly for Haywood's right pocket. But Haywood does not point to evidence that leaves us with a "definite and firm conviction that a mistake has been committed." Price, 558 F.3d at 277. For instance, regardless of whether the officers arguably appear "surprised" by the discovery of the gun, such behavior is consistent with the officers' testimony that Detective Ribeiro did not tell his colleagues when he spotted the gun handle protruding from Haywood's pocket. Additionally, we have no basis on which to conclude that the heavier fabric of Haywood's sweatshirt would have concealed the gun from Detective's Ribeiro's view, and any mistake in the officers' description of Haywood's clothing does not disturb the deference we owe to the District Court's finding that the officers' testimony was otherwise forthright and credible. Especially when construing the record in the light most favorable to the government, none of Haywood's theories entails a conclusion that the District Court committed clear error.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.