**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1344
_____

UNITED STATES OF AMERICA

v.

FATOU SMALL,
                              Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:17-cr-00027-001)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
On November 15, 2019

Before: AMBRO, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: January 6, 2020)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Specific, corroborated tips about drug dealing can give officers reasonable suspicion to stop a car and search it. A reliable informant told officers that Fatou Small was using a black Lincoln Town Car to transport large amounts of ecstasy and that he was a major drug dealer. The officers corroborated part of this tip when they confirmed that the black Town Car they saw in Small's driveway belonged to him. They also knew that Small was on probation after a felony drug conviction and that he had twice failed curfew checks.

So when they later saw him driving that car, they could reasonably suspect a crime and thus could pull him over. And because Small was on probation, this reasonable suspicion justified searching not only his car, but also his house. Because the stop of his car and both searches were constitutional, we will affirm the District Court's denial of his motion to suppress.

## I. BACKGROUND

### A. Small's suspicious history on probation

After serving time in Delaware state prison for a drug felony, Small was released on probation. As a probationer, he had to comply with court-ordered conditions, including a curfew. Yet within months of his release, he began missing curfew checks. In May 2016, when Dover Probation Officer Ricky Porter visited Small's home, Small did not answer the door.

In September 2016, Officer Porter, along with Dover Police Officers Joshua Boesenberg and Justin Richey, tried again. When they got to Small's house, they saw another man

2

leave the house and get into a car. As Officer Porter approached the car, the man sped away. The officers pursued the man and arrested him after he crashed his car.

After the chase, Officer Porter returned to Small's house. He heard a male voice inside. But when he knocked, no one answered. He also saw a black Lincoln Town Car parked in the driveway and later learned that it belonged to Small.

So the officers began surveilling Small's house and investigating his behavior. As part of that investigation, they developed a relationship with a confidential informant. The informant, who later gave the police reliable information in other cases, said that Small was a major supplier of ecstasy around Dover. Speaking from personal knowledge, the informant explained that Small would bring ecstasy from New York City to Dover in his black Lincoln Town Car and then sell it from his home. The officers also spoke with others who corroborated Small's ecstasy dealing.

Over the next six months, the officers spoke to the confidential informant four or five times. They repeatedly tried to contact Small but could not.

**B. The stop and search**

One afternoon in March 2017, Officers Boesenberg, Porter, and Richey were on routine patrol through Small's neighborhood. They decided to drive past Small's house to see if he was home. As they approached, they saw Small's black Lincoln Town Car idling in the driveway with someone sitting in the passenger seat. So they called in backup to keep an eye on the house and the car.

The officers then drove away. But when they realized that Small might leave before surveillance arrived, they turned around. Sure enough, on the way back, they passed the

3

black Lincoln Town Car driving away from the house. They saw that Small was driving and, they later testified, noticed a crack in the front windshield. So they decided to pull him over.

When Officer Boesenberg approached the driver's side, he smelled marijuana. Small's passenger admitted that she had been smoking it before the officers pulled them over. She also said that, after the officers started following them and turned on their patrol car's emergency lights, Small gave her a bag of pills to hide.

The officers arrested both Small and the passenger, searched the car, and found marijuana and ecstasy pills. They then got an administrative warrant for a probationer search of Small's home, where they found more marijuana and ecstasy pills, along with digital scales and a pistol.

## C. Small's motion to suppress

Small was charged with being a felon in possession of a gun and possession with intent to distribute a controlled substance. He moved to suppress the evidence from the searches and the statements he made to police after they stopped his car. *United States v. Small*, No. 1:17-cr-00027-001, 2018 WL 2049821, at *2 (D. Del. May 2, 2018) He argued that the traffic stop was illegal because "the officers could not have seen the windshield crack as they drove past" his car. *Id.* After a suppression hearing, the District Court denied Small's motion. *Id.* at *1. It found the officers' testimony credible and explained that the government had "specific, articulable facts to justify a belief that Small was violating a traffic law at the time of the stop" because his windshield was cracked. *Id.* at *2.

4

Small conditionally pleaded guilty, reserving his right to challenge the denial of his motion to suppress. On appeal, he again argues that the officers could not have seen the windshield crack when driving by, so they lacked reasonable suspicion of a traffic violation. We review the District Court's finding of reasonable suspicion de novo. *Ornelas v. United States*, 517 U.S. 690, 691 (1996).

## II. THE OFFICERS COULD HAVE REASONABLY SUSPECTED THAT SMALL WAS TRANSPORTING DRUGS

The traffic stop, the search of Small's car, and the administrative search of his house are three separate actions, so "each requires its own justification." *United States v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010). Because Small was on probation, the officers needed only reasonable suspicion for each of those actions. *See United States v. Henley*, 941 F.3d 646, 651 (3d Cir. 2019); *United States v. Hill*, 967 F.2d 902, 909 (3d Cir. 1992). And because the officers could have reasonably suspected that Small was using his car to transport ecstasy, the traffic stop and two searches were constitutionally valid. This is true even if the officers could not have seen the crack in Small's windshield. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

### A. The stop of Small's car was valid

The Fourth Amendment lets "an officer … conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The reasonable-suspicion standard applies whether the suspect is traveling on foot or by car. *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006).

5

Reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Wardlow*, 528 U.S. at 123. The officer need articulate only a " 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). To decide whether an officer could have reasonably suspected wrongdoing, we look at the totality of the circumstances. *Id.*

The government argues that the officers reasonably suspected a traffic violation because they saw a crack in Small's windshield. The District Court agreed. 2018 WL 2049821, at *2. On appeal, Small marshals considerable evidence to the contrary. He shows that the officers' reported sighting of a "large" and "clearly visible" crack in Small's "[s]everely damaged" windshield that "obstructed [Small's] vision" does not square with the photographs taken of his windshield later that day. *Compare* JA 67, 132, 134 (officers' testimony), *with* JA 143–45 (photographs of Small's car). Nor was the crack visible in the video footage of the traffic stop.

But we need not question the District Court's credibility finding because "[w]e may affirm on any ground supported by the record." *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005). Here, the officers had an alternative basis for the stop: reasonable suspicion that Small was using his car to traffic drugs.

When the officers saw Small driving by them, they had an articulable basis to suspect that he had ecstasy in the car. Based on tips from a reliable informant, they knew that he used his black Lincoln Town Car to transport ecstasy. This tip alone could arguably support reasonable suspicion. *See Gatlin*, 613 F.3d at 378.

6

Plus, the officers' personal observations partially corroborated the tip. At the September 2016 curfew check, Officer Porter saw a black Lincoln Town Car parked in Small's driveway. Afterwards, he ran the car's registration and found that it was Small's. On top of this, the officers knew that Small had been behaving suspiciously for months: he had failed two curfew checks, one of which had led to a hot pursuit of a man who had just come out of Small's home.

These particularized facts, coupled with Small's prior drug conviction, could lead the officers to reasonably suspect that Small used his car to transport drugs. *See United States v. Green*, 897 F.3d 173, 187 (3d Cir. 2018) ("Though a criminal record … is not sufficient to establish reasonable suspicion, it is a valid factor."). So as soon as the officers saw the black Lincoln Town Car pass them with Small at the wheel, they had reason to suspect a crime.

Small argues that because the informant's tips date to September 2016, they had gone stale by the March 2017 stop. But Officers Boesenberg and Porter had spoken to the informant four or five more times in the intervening six months. The last of these was only one-and-a-half to two weeks before the stop. In any event, the passage of time "loses significance" when tips relate to ongoing crimes. *Henley*, 941 F.3d at 653 (quoting *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005)). So the tips were not stale. The officers still had reasonable suspicion and could make the stop.

7

**B. The searches of Small's car and home were also valid**

After stopping Small's car, the officers searched it. They also later searched his home. We hold that these searches were valid for three reasons.

First, the same reasonable suspicion that justified the traffic stop likewise justified the search of the car. Ordinarily, the automobile exception to the warrant requirement lets officers search a car without a warrant if there is probable cause to believe that the car holds evidence of a crime. *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014). But because of the "special needs" of the probation system, searches of probationers' property require not probable cause, but only reasonable suspicion. *Hill*, 967 F.2d at 907–09 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 875–76 (1987)). As discussed, the officers reasonably suspected that Small was transporting drugs in his car. So they could search the car without a warrant.

Second, after the lawful stop began, the officers gathered more evidence that corroborated and heightened their suspicion. After stopping Small's car, Officer Boesenberg approached the car and smelled marijuana coming from it. Then Officer Porter questioned the passenger, who admitted that she had been smoking marijuana before the stop. She also said that once the stop began, Small gave her a bag of pills to hide. Only after these admissions did the officers search the vehicle. By that point, the officers had "not merely reasonable suspicion, but probable cause" to search the car for drugs. *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006).

Finally, the officers' reasonable suspicion that Small was dealing ecstasy also justified the probationer search of his house. Small argues that the administrative search warrant

rested on the evidence gathered from the allegedly illegal search of his car. But the stop and search of his car were both lawful.

In any case, the officers had reason to suspect Small of drug dealing *before* they pulled him over in March 2017. Because Small is a probationer, this reasonable suspicion was all the officers needed to search his house. *Henley*, 941 F.3d at 651; *Hill*, 967 F.2d at 909. The evidence gathered from the car search only bolstered the officers' grounds for searching his house. Thus, that search was also valid under the Fourth Amendment.

*    *    *    *    *

Even if the officers could not have seen the crack in Small's windshield before they pulled him over, they saw that he was driving his black Lincoln Town Car. That was enough. Based on tips from a reliable informant, the officers' own observations, and Small's criminal record, they could have reasonably suspected that he had ecstasy in his car. With that reasonable suspicion, they could pull him over and search both his car and his house. So the stop and both searches were constitutionally valid. We will thus affirm.